STATE OF NORTH CAROLINA v. DENNIS KEITH JACKSON, JR.

No. COA10-1182

(Filed 17 May 2011)

**1. Appeal and Error— preservation of issues—failure to object—failure to argue plain error**

Although defendant contended that the trial court erred in a felonious operation of a motor vehicle to elude arrest case by denying defendant's motion to suppress, defendant failed to preserve this issue by failing to object at trial and by failing to argue plain error.

**2. Motor Vehicles— felonious operation of motor vehicle to elude arrest—motion to dismiss—aggravating factors**

The trial court did not err by denying defendant's motion to dismiss the charge of felonious operation of a motor vehicle to elude arrest because sufficient evidence was presented of the aggravating factors necessary to support the conviction.

**3. Constitutional Law— effective assistance of counsel—failure to object**

A defendant was not denied effective assistance of counsel in a felonious operation of a motor vehicle to elude arrest case based on his trial counsel's failure to object to evidence obtained from an alleged illegal search. Defendant failed to show he was prejudiced when defendant voluntarily answered the front door of his house to answer the officers' questions and did not challenge the voluntariness of his later statements to the officers in which he admitted to being the driver of the motorcycle.

Appeal by defendant from judgment entered 6 April 2010 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 7 March 2011.

*Roy Cooper, Attorney General, by J. Allen Jernigan, Special Deputy Attorney General, for the State.*

*James W. Carter, for defendant-appellant.*

Defendant Dennis Keith Jackson, Jr. appeals from a judgment entered upon a jury verdict finding him guilty of felonious operation of a motor vehicle to elude arrest. We find no error.

The evidence presented at trial tended to show that, on 23 August 2009 at around 5:00 p.m., while traveling northbound on U.S. Highway 29 in Guilford County, North Carolina, State Highway Patrol Trooper Robert M. Robertson, Jr. observed a blue motorcycle traveling in the southbound lane on the highway "coming at [him] at a high rate of speed." Because the area was a 55 mile-per-hour zone, Trooper Robertson activated his radar and clocked the vehicle as traveling 82 miles per hour. The trooper then proceeded to cross the grassy median dividing the two northbound and two southbound lanes of U.S. Highway 29, activated his marked patrol car's siren and rooftop and front grill lights, and began pursuit of the blue motorcycle in the southbound lanes of U.S. Highway 29. Trooper Robertson testified that

> [he] could see that the motorcycle [was] going from the left lane to the right lane going around traffic back and forth just going up through there. Normal traffic in there is from 55 to 60. So, you know, a vehicle doing 80 plus would have to go from left to right to—to get around them.

Then, after Trooper Robertson was within seven or eight car lengths of the motorcycle, the motorcycle maneuvered out of the left lane by "cut[ting] through" the slower, heavier traffic on the highway and exited at Hicone Road. The trooper exited the highway to continue his pursuit of the motorcycle and, although he got close enough to read the license tag on the motorcycle, he was unable to do so because the tag was affixed at a 45 degree or 60 degree angle, which made it unreadable while the trooper was in pursuit. Due to the heavy traffic on Hicone Road, Trooper Robertson lost sight of the motorcycle for a brief period of time, but then got within 100 feet or less shortly before the vehicle reached Hines Chapel Road. The trooper then saw the motorcycle turn right onto Hines Chapel Road without stopping at the red traffic light and, when the driver made the right turn, the trooper "could see the driver very well, [he] could see the bike very well. And the actual driver himself turned back and looked at [Trooper Robertson] when he was turning, making that right turn onto Hines Chapel." Then, as the motorcycle continued on Hines Chapel Road, the trooper paced the vehicle as traveling at speeds in excess of 108 miles per hour, at which time the trooper again lost sight of the motorcycle.

Over defendant's objection, Trooper Robertson testified that a motorist and his passenger flagged the trooper down and asked him if he was "looking to find a blue bike," and told the trooper where

STATE v. JACKSON

[212 N.C. App. 167 (2011)]

they had seen it last. Based on this information, the trooper turned his vehicle around and proceeded in the direction from which he came. By this time, additional units from the Guilford County Sheriff's Department had also arrived in the area to look for the motorcycle.

After State Trooper Royce Barham first heard the call that Trooper Robertson was "attempting to overtake a fleeing blue motorcycle on U.S. 29," he immediately headed towards the area of Hicone and Hines Chapel Roads, the last location in which the motorcycle was seen. Less than a minute later, and about six or seven minutes after the chase initially began, Trooper Barham started into a sharp sweeping curve on Creekview Road near Hines Chapel Road and "met" the blue motorcycle as both vehicles approached the curve from opposite directions. Because the sharp curve required both drivers to slow their vehicles to 15 or 20 miles per hour, the trooper testified, "And as we met[,] I looked over at the driver of the motorcycle and made eye contact with him." Because the shield of the helmet covering the driver's eyes and nose was clear, Trooper Barham "could tell it was a white male and [he] could make out his eyebrows, nose and eyes." Trooper Barham then reported where he had encountered the blue motorcycle to the other units and, upon hearing Trooper Barham's report, Trooper Robertson proceeded back towards Hines Chapel Road.

As Trooper Robertson drove slowly down Hines Chapel Road, looking up driveways and at houses for any sign of the blue motorcycle, he was flagged down again, this time by an older man and his grandchildren in the front of the man's house: "[H]e told me that if I was looking for a blue motorcycle, that a blue motorcycle just come [sic] speeding by and pulled into the driveway at his neighbor's house right [next door]."

Trooper Robertson pulled into the driveway at 3703 Hines Chapel Road and followed the curved driveway to the rear of the house. The trooper then testified:

As soon as I pulled into the driveway I kind of scanned everywhere to see if I could see where the—where the blue bike was. I didn't know if he proceeded through the yard into the next yard or what. I was—I was looking around making sure that there was no one out there or anything like that.

. . . .

At that time—point in time I stepped out of the patrol vehicle and took about four or five steps up to the van and I was mainly look-

ing into the big building that was back there. I thought that maybe he had pulled through there. And as I looked at the building[, which looked like "some type of aircraft hangar-type building, one of those big industrial-type metal buildings" that appeared to serve as a carport,] I looked back and the blue bike was on the carport beside [a] silver van. And I think there was another small passenger car there also. It was in between the two.

After seeing the blue motorcycle, the trooper determined that this was the same vehicle he had been pursuing, based on the overall look of the vehicle, the angled license tag, and the heat he could feel emanating from the vehicle from several feet away. Trooper Robertson returned to his patrol vehicle and communicated with the other units in the area that he "believe[d] [he] had found the blue bike." He then backed his patrol vehicle out of the driveway to signal his location to the other officers in the area.

About one minute later, Trooper Barham arrived on the scene and both troopers drove into the driveway, took another look at the motorcycle parked in the carport structure, and proceeded to the front door of the residence. The troopers told the woman who answered the door that they "needed to see the driver of the blue bike." Defendant then came to the door, wearing jeans like those worn by the driver of the motorcycle, and sweating profusely. When defendant appeared at the door, Trooper Barham "immediately recognized him as the person on or the driver of the bike that [he] saw over on [Creekview] Road," because "[i]t was the same set of eyes, eyebrows, and nose that [he] just saw."

Defendant initially denied being the driver of the motorcycle, claiming that the motorcycle had been parked for several hours. The troopers then placed defendant under arrest, advised him of his *Miranda* rights, and verified that defendant was the owner of the vehicle by running the Vehicle Identification Number and tag through their communications center. Defendant then asked to speak with Trooper Robertson and admitted to the trooper that he was the driver of the motorcycle. Defendant was "very apologetic," and said that he "just didn't want a speeding ticket and that he had a Class A CDL and he didn't want to lose his job; and if he got a ticket or if he, you know, got in trouble, he could possibly lose his job." One of the people in the house then brought out a helmet and jacket, both of which appeared to be the same as the items that Troopers Barham and Robertson observed the driver of the motorcycle wearing during the pursuit.

**STATE v. JACKSON**

[212 N.C. App. 167 (2011)]

Defendant was indicted with one count of felonious fleeing to elude arrest with a motor vehicle in violation of N.C.G.S. § 20-141.5(b). Defendant moved to suppress the evidence gathered at 3703 Hines Chapel Road, as well as the contents of his statements made after his arrest. The trial court denied defendant's motion by order, in which it made detailed findings of fact and conclusions of law. The case was tried before a jury in Guilford County Superior Court. Defendant moved to dismiss the charge at the close of the State's evidence, which was denied. Defendant informed the court that he would not present any evidence, and so did not renew his motion to dismiss the charge at the close of all of the evidence. The jury found defendant guilty and, on 6 April 2010, the court entered its judgment upon the jury's verdict and sentenced defendant to a term of six to eight months imprisonment suspended on the condition of sixty months of supervised probation. Defendant appeals.

I.

**[1]** Defendant first contends the trial court erred by denying his motion to suppress. However, defendant concedes in his brief that he did not object when the evidence that was the subject of his motion was introduced at trial. Therefore, defendant has failed to preserve this issue for review. *See State v. Golphin,* 352 N.C. 364, 463, 533 S.E.2d 168, 232 (2000) ("To preserve an issue for appeal, the defendant must make an objection at the point during the trial when the State attempts to introduce the evidence. A defendant cannot rely on his pretrial motion to suppress to preserve an issue for appeal. His objection must be renewed at trial. [Defendant's] failure to object at trial waived his right to have this issue reviewed on appeal. This assignment of error is overruled." (citations omitted)), *cert. denied,* 532 U.S. 931, 149 L. Ed. 2d 305 (2001).

Although defendant suggests that this Court may review this issue for plain error, defendant asserts only that "it was prejudicial error for the trial court to deny the motion to suppress" because, "[i]f not for the illegal search, there would have been no evidence of [defendant] as the driver of the motorcycle." However, "[i]n meeting the heavy burden of plain error analysis," a defendant "must convince this Court, with support from the record, that the claimed error is so fundamental, so basic, so prejudicial, or so lacking in its elements that absent the error the jury probably would have reached a different verdict." *State v. Cummings,* 352 N.C. 600, 636, 536 S.E.2d 36, 61 (2000), *cert. denied,* 532 U.S. 997, 149 L. Ed. 2d 641 (2001). Thus,

"[d]efendant *has the burden of showing* . . . (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." *Id.* (omission in original) (internal quotation marks omitted). In the present case, defendant "provides no explanation, analysis or specific contention in his brief supporting the bare assertion that the claimed error is so fundamental that justice could not have been done." *See id.* "Defendant's empty assertion of plain error, without supporting argument or analysis of prejudicial impact, does not meet the spirit or intent of the plain error rule." *See id.* at 637, 536 S.E.2d at 61. "By simply relying on the use of the words 'plain error' as the extent of his argument in support of plain error, defendant has effectively failed to argue plain error and has thereby waived appellate review." *See id.* Accordingly, we decline to review this issue for plain error.

II.

**[2]** Defendant next contends the trial court erred by denying his motion to dismiss because defendant argues the State presented insufficient evidence to establish that defendant drove recklessly. We disagree.

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Etheridge*, 319 N.C. 34, 47, 352 S.E.2d 673, 681 (1987). "The test of the sufficiency of the evidence to withstand the motion is the same whether the evidence is direct, circumstantial or both." *Powell*, 299 N.C. at 99, 261 S.E.2d at 117. "The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom . . . ." *Id.*

N.C.G.S. § 20-141.5(a) provides in relevant part: "It shall be unlawful for any person to operate a motor vehicle on a street, highway, or public vehicular area while fleeing or attempting to elude a law enforcement officer who is in the lawful performance of his duties." N.C. Gen. Stat. § 20-141.5(a) (2009). Violation of this section shall be a Class H felony when both of "the following aggravating fac-

tors are present at the time the violation occurs": "[s]peeding in excess of 15 miles per hour over the legal speed limit"; and "[r]eckless driving as proscribed by G.S. 20-140." N.C. Gen. Stat. § 20-141.5(b)(1), (b)(3). Reckless driving is defined in N.C.G.S. § 20-140 as follows:

(a) Any person who drives any vehicle upon a highway or any public vehicular area carelessly and heedlessly in willful or wanton disregard of the rights or safety of others shall be guilty of reckless driving.

(b) Any person who drives any vehicle upon a highway or any public vehicular area without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property shall be guilty of reckless driving.

N.C. Gen. Stat. § 20-140(a)–(b) (2009).

In the present case, defendant contends the State failed to present evidence of the aggravating factors necessary to support a conviction for felonious fleeing to elude arrest because defendant asserts the State failed to present evidence in conformity with the trial court's instructions to the jury that defendant drove recklessly by improperly weaving through traffic and improperly crossing a solid yellow double line. However, Trooper Robertson testified that he clocked defendant traveling at a speed of 82 miles per hour in a 55 mile-per-hour zone and observed defendant maneuvering "from the left lane to the right lane going around traffic back and forth just going up through there." When asked whether the motorcycle was "weaving in and out of vehicles," Trooper Robertson answered:

Yeah, both—it's a two-lane highway going northbound and southbound. There was [sic] vehicles not bumper to bumper, but they were sporadically through both lanes, both of the southbound lanes so that you couldn't just go straight up one lane. You had to merge into traffic left and right to get around it. Like I said, most of the traffic at this point in time was probably about 55 to 65, somewhere around that area; so that if a vehicle was traveling at 85 or—or 80 miles an hour, they would have to go in and out of lanes to go around the vehicles.

Additionally, with respect to whether defendant improperly crossed a solid double yellow line, Trooper Robertson testified that most of the portion of Hicone Road traveled by defendant was a two-lane road

divided by a solid double yellow line. The trooper further testified that, based on the amount of traffic present on Hicone Road at the time he pursued defendant, defendant would have had "to go around that traffic to get down through there . . . to go around those vehicles to get down to where he was at." Thus, although the trooper had lost sight of defendant's motorcycle while on Hicone Road after exiting U.S. Highway 29, the trooper's testimony allowed the jury to reasonably infer that defendant would have had to travel across the solid double yellow line to maneuver through the traffic while being pursued by Trooper Robertson. See State v. Rowland, 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965) ("When the motion for nonsuit calls into question the sufficiency of circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty."). Therefore, we conclude the State presented sufficient evidence of the aggravating factors necessary to support a conviction for felonious fleeing to elude arrest. Accordingly, we overrule this issue on appeal.

III.

[3] Finally, defendant contends he was denied effective assistance of counsel because his trial counsel failed to object when the evidence that was the subject of his motion to suppress was introduced at trial. Again, we disagree.

"When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985). "The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *Id.* at 563, 324 S.E.2d at 248. The general rule is "that the incompetency (or one of its many synonyms) of counsel for the defendant in a criminal prosecution is not a Constitutional denial of his right to effective counsel unless the attorney's representation is so lacking that the trial has become a farce and a mockery of justice." *State v. Sneed*, 284 N.C. 606, 612, 201 S.E.2d 867, 871 (1974). Since "there can be no precise or 'yardstick' approach in applying the recognized rules of law in this area," "each case must be approached upon an *ad hoc* basis, viewing circumstances as a whole, in order to

determine whether an accused has been deprived of effective assistance of counsel." *Id.* at 613, 201 S.E.2d at 872.

Here, defendant suggests that the "only evidence" that defendant was the driver of the motorcycle resulted from Trooper Robertson's discovery of defendant's blue motorcycle in the carport located in the back of the residence at 3703 Hines Chapel Road, and appears to suggest that, but for the trooper's purported "illegal" search that led to discovery of the motorcycle, the jury "would have had to acquit [defendant] of the charge." Nevertheless, Trooper Robertson testified that he was directed to the residence at Hines Chapel Road by a neighbor, who told the trooper that, "if [he] was looking for a blue motorcycle, that a blue motorcycle just come [sic] speeding by and pulled into the driveway at [the] neighbor's house right [next door]." Trooper Barham further testified that, because he had an opportunity to see defendant's face during the pursuit, he immediately recognized defendant as the driver of the motorcycle when defendant voluntarily came to the front door of the residence when Troopers Barham and Robertson asked to speak to the driver of the motorcycle. Because defendant concedes that "[l]aw enforcement officers have the right to approach a person's residence to inquire whether the person is willing to answer questions," *State v. Wallace,* 111 N.C. App. 581, 585, 433 S.E.2d 238, 241, *disc. review denied,* 335 N.C. 242, 439 S.E.2d 161 (1993), and because defendant does not challenge the voluntariness of his later statements to the troopers in which he admitted to being the driver of the motorcycle, we are not persuaded that defense counsel's representation at trial was "so lacking" as to turn defendant's trial into "a farce and a mockery of justice" when he failed to object to the testimony regarding the discovery of the blue motorcycle in the carport. *See Sneed,* 284 N.C. at 612, 201 S.E.2d at 871. Accordingly, we overrule this issue on appeal.

No error.

Judges McGEE and McCULLOUGH concur.