**STATE v. HARWOOD**

[221 N.C. App. 451 (2012)]

STATE OF NORTH CAROLINA v. JOSHUA EDWARD HARWOOD

No. COA11-1513

(Filed 3 July 2012)

## 1. Appeal and Error—plain error—no objection at trial—not listed in issues in record—argued in brief

The denial of defendant's motion to suppress was reviewed for plain error after defense counsel did not object to the admission of challenged evidence at trial but specifically argued plain error on appeal. Even though defendant did not mention the plain error doctrine in the issues listed in the record on appeal, defendant clearly argued plain error in his brief.

## 2. Search and Seizure—seizure of defendant—not a traffic stop—insufficient grounds

There was a seizure of defendant rather than a traffic stop where officers followed defendant as he drove away from a suspected drug sale, defendant pulled into the driveway of a residence not his own, the officers parked behind him, and the officers removed defendant from the car at gunpoint, placed him on the ground, and handcuffed him. The officers needed a reasonable and articulable suspicion of criminal activity.

## 3. Search and Seizure—basis for seizure of defendant—anonymous tip—not sufficient

Investigating officers lacked a sufficient basis for seizing defendant where the justification was provided by an anonymous tip that contained limited details and the officers did not corroborate the tip's allegations of illegal activity.

## 4. Search and Seizure—obtained after illegal seizure of person—plain error

The trial court committed plain error in a drugs case by admitting evidence obtained after defendant was seized without the necessary reasonable, articulable suspicion. Defendant's statement and his consent to a search of his residence resulted directly from the officer's decision to detain him and, without the evidence obtained as a result of that unlawful detention, the record would probably not have contained sufficient evidence to establish defendant's guilt.

**STATE v. HARWOOD**

[221 N.C. App. 451 (2012)]

Appeal by defendant from judgment entered 3 August 2011 by Judge James U. Downs in Buncombe County Superior Court. Heard in the Court of Appeals 4 April 2012.

*Attorney General Roy Cooper, by Special Deputy Attorney General Angel E. Gray, for the State.*

*Russell J. Hollers III, for defendant-appellant.*

ERVIN, Judge.

Defendant Joshua Edward Harwood appeals from a judgment sentencing him to twelve to fifteen months imprisonment based upon his convictions for possession of a firearm by a convicted felon, possession of marijuana with intent to sell or deliver, possession of cocaine with intent to sell or deliver, and simple possession of a schedule IV controlled substance. On appeal, Defendant contends that the trial court erred by denying his motion to suppress, admitting evidence obtained as the result of an unlawful detention of his person, and ordering the forfeiture of currency found in his possession and that his trial counsel's failure to object to the admission of the challenged evidence at trial constituted ineffective assistance of counsel. After careful consideration of Defendant's challenges to the trial court's judgment in light of the record and the applicable law, we conclude that Defendant is entitled to a new trial and that the order of forfeiture should be vacated pending further proceedings in the court below.

## I.  Factual Background

### A.  Substantive Facts

On 15 July 2010, Agent Mitch McAbee, a deputy with the Buncombe County Sheriff's Department who worked as a member of the Buncombe County Anticrime Task Force, received an anonymous tip indicating that, later that day, Defendant would be selling marijuana to an unidentified individual at a certain convenience store located in Weaverville and that Defendant would be driving a "white vehicle." Although Agent McAbee had not previously encountered Defendant, he had learned from "talking to people in the community . . . since [being] on patrol" that Defendant had been "supposedly . . . selling illegal drugs in that part of the county for a long time."

After obtaining a photograph of Defendant and reviewing Defendant's local criminal history, Agent McAbee and Agent Tim Goodridge, another member of the Buncombe County Anticrime

Taskforce, drove to the convenience store in an unmarked vehicle which lacked blue lights or a siren. As Agent McAbee pulled into the convenience store parking lot, a white vehicle, beside which an individual was standing, began backing out of a parking space. As the white vehicle backed out, Agent McAbee identified Defendant as the driver and followed Defendant's vehicle onto the highway.

After traveling a short distance, Agent McAbee observed Defendant's vehicle accelerate and then turn off the highway onto a secondary road and into a housing development. At that point, Defendant parked his vehicle in the driveway of a residence which had an address different than that of Defendant. As a result, Agent McAbee pulled into the driveway behind Defendant's vehicle. After Agent Goodridge observed that the front doors to Defendant's vehicle appeared to be open, both officers exited their vehicle with weapons drawn, identified themselves, and ordered Defendant and his passenger, David White, to exit Defendant's vehicle. Agent McAbee approached Defendant, "placed him on the ground and handcuffed him."

As other officers arrived, Agent McAbee escorted Defendant to the agents' vehicle in order to speak with him. At some point, Agent McAbee determined that there was an outstanding warrant for Defendant's arrest. Although Agent McAbee could not recall if he removed Defendant's handcuffs or read Defendant his *Miranda* rights, his standard practice would have been to do so. After Agent McAbee told Defendant about the anonymous tip that he had received and after a certain amount of additional conversation, Defendant admitted that he had traveled to the gas station for the purpose of selling marijuana. When Agent McAbee asked if Defendant had any more marijuana and if he would be "willing to let [agents] go back to his residence and look," Defendant agreed. As Agent McAbee was speaking with Defendant, Agent Goodridge took Mr. White aside, removed his handcuffs, and discovered a small amount of marijuana on his person which Mr. White indicated belonged to Defendant.

After the agents and Defendant arrived at Defendant's residence, Defendant provided a key to the door. The agents and Defendant went inside the home and into Defendant's bedroom, where the agents found a loaded SKS rifle and two ammunition canisters containing quantities of marijuana, cocaine and pills, some of which were identified as Diazepam. After making this discovery, Defendant was placed under arrest based upon the outstanding warrant.

## B.  Procedural History

On 9 November 2010, warrants for arrest charging Defendant with possession of marijuana with the intent to sell or deliver, possession of cocaine with the intent to sell or deliver, and simple possession of a schedule IV controlled substance were issued. On 2 May 2011, the Buncombe County Grand Jury returned bills of indictment charging Defendant with possession of marijuana with the intent to sell or deliver, possession of cocaine with the intent to sell or deliver, simple possession of a schedule IV controlled substance, and possession of a firearm by a felon. On 1 August 2011, Defendant filed a motion seeking the suppression of any evidence, including statements, obtained as the result of his encounter with Agent McAbee and the subsequent search of his residence on the grounds that the evidence in question was obtained in violation of his constitutional right to be free from unreasonable searches and seizures.

The charges against Defendant came on for trial before the trial court and a jury at the 1 August 2011 criminal session of Buncombe County Superior Court. After conducting a pre-trial hearing, the trial court denied Defendant's suppression motion, reciting findings of fact on the record consistent with the factual statement set out above and concluding that (1) a traffic stop did not take place and (2) the officers possessed a "sufficient articulable suspicion that the [D]efendant was involved with the possession and sale and distribution of illegal substances." At the conclusion of all of the evidence, Defendant's counsel renewed his suppression motion, which the trial court denied once again. Defendant's counsel did not, however, object when the State offered testimony concerning Defendant's consent to the search of his residence or when the firearm and controlled substances seized inside Defendant's residence were admitted into evidence.

On 3 August 2011, the jury returned verdicts convicting Defendant as charged. The trial court consolidated Defendant's convictions for judgment, sentenced Defendant to an active term of twelve to fifteen months imprisonment, and ordered that certain currency taken from Defendant be forfeited. Defendant noted an appeal to this Court from the trial court's judgment.

## II.  Legal Analysis

### A.  Standard of Review

[1] In our review of trial court orders addressing suppression motions, " 'the trial court's findings of fact are conclusive on appeal if

supported by competent evidence, even if the evidence is conflicting. This Court must not disturb the trial court's conclusions if they are supported by the [trial] court's factual findings. However, the trial court's conclusions of law are fully reviewable on appeal.' " *State v. Leach*, 166 N.C. App. 711, 715, 603 S.E.2d 831, 834 (2004) (quoting *State v. McArn*, 159 N.C. App. 209, 211-12, 582 S.E.2d 371, 373-74 (2003) (internal citations and quotation marks omitted)), *appeal dismissed*, 359 N.C. 640, 614 S.E.2d 538 (2005).

"[A] pretrial motion to suppress evidence is not sufficient to preserve for appellate review the issue of whether the evidence was properly admitted if the defendant fails to object at the time the evidence is introduced at trial." *State v. Barden*, 356 N.C. 316, 332, 572 S.E.2d 108, 120 (2002) (citations omitted), *cert. denied*, 538 U.S. 1040, 123 S. Ct. 2087, 155 L. Ed. 2d 1074 (2003). In view of the fact that Defendant's counsel failed to object to the admission of the challenged evidence at trial, Defendant did not preserve his challenge to the denial of his suppression motion for appellate review. *State v. Jackson*, ___ N.C. App. ___, ___, 710 S.E.2d 414, 418 (2011) (holding that the defendant waived his right to appellate review of the denial of his suppression motion by failing to object to the admission of the challenged evidence when it was offered at trial). However, given that Defendant has specifically argued that the trial court committed plain error by allowing the admission of the challenged evidence,[1] *State v. Lawrence*, ___ N.C. ___, ___, 723 S.E.2d 326, 333 (2012) (stating that, "[t]o have an alleged error reviewed under the plain error standard, the defendant must 'specifically and distinctly' contend that the alleged error constitutes plain error" (quoting N.C. R. App. P. 10(a)(4)); *Jackson*, ___ N.C. App. at ___, 710 S.E.2d at 418 (declining to review the denial of the defendant's suppression motion under a plain error standard where the defendant failed to do more than simply state that the trial court committed plain error by admitting the challenged evidence), we will review the trial court's denial of Defendant's suppression motion for plain error. *Leach*, 166 N.C. App. at 714, 603 S.E.2d at 833-34 (reviewing the denial of a defendant's suppression motion using a plain error standard of review in a

1. Although the State argues that Defendant failed to mention the "plain error" doctrine in the issues listed in the record on appeal and failed to adequately advance a "plain error" claim for that reason, we do not find the State's argument convincing given that Defendant clearly asserted plain error in his brief and given that N.C. R. App. P. 10(b) specifically provides that "[p]roposed issues . . . are to facilitate the preparation of the record on appeal and shall not limit the scope of the issues presented on appeal in an appellant's brief."

case in which the defendant, after failing to object to the admission of the challenged evidence at trial, specifically argued "plain error" on appeal).

As this Court and the Supreme Court have frequently stated, plain error consists of an error that is "so fundamental that it undermines the fairness of the trial, or [has] a probable impact on the guilty verdict." *State v. Floyd*, 148 N.C. App. 290, 295, 558 S.E.2d 237, 240 (2002). In order to obtain relief on plain error grounds, an appealing party must show "(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or a denial of a fair trial." *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997) (citations omitted). Given that "[a] prerequisite to our engaging in a 'plain error' analysis is the determination that the [trial court's ruling] constitutes 'error' at all," *State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468, *cert. denied*, 479 U.S. 836, 107 S. Ct. 133, 93 L. Ed. 2d 77 (1986), we will initially determine if the trial court erred by denying Defendant's suppression motion and then ascertain whether any error committed by the trial court rose to the level of plain error.

### B. Substantive Legal Analysis

#### 1. Seizure

**[2]** The first substantive issue that we must address is whether the trial court correctly determined that Defendant was not "stopped" because a traffic stop had not taken place. After carefully reviewing the record, we conclude that, although a traffic stop does not appear to have ever taken place, Defendant was subjected to a "seizure."

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "[T]here are generally two ways in which a person can be 'seized' for Fourth Amendment purposes: (1) by arrest, which requires a showing of probable cause; or (2) by investigatory detention, which must rest on a reasonable, articulable suspicion of criminal activity." *State v. Carrouthers*, ____ N.C. App. ____, ____, 714 S.E.2d 460, 463 (2011), *disc. review denied*, 365 N.C. 361, 718 S.E.2d 392 (2011) (citation omitted). While "law enforcement officers do not violate the Fourth Amendment's prohibition against unreasonable seizures 'merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen,'" *State v.*

*Isenhour,* 194 N.C. App. 539, 542, 670 S.E.2d 264, 267 (2008) (quoting *United States v. Drayton,* 536 U.S. 194, 200, 122 S. Ct. 2105, 2110, 153 L. Ed. 2d 242, 251 (2002)), such officers do effectuate a seizure for Fourth Amendment purposes when, " 'by means of physical force or show of authority,' [they] terminate[] or restrain[] [a person's] freedom of movement[.]" *Brendlin v. California,* 551 U.S. 249, 254, 127 S. Ct. 2400, 2405, 168 L. Ed. 2d 132, 138 (2007) (quoting *Florida v. Bostick,* 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389, 398 (1991) (citation and quotation marks omitted)). The operative question for purposes of determining if a seizure occurred is whether "a reasonable person would feel free to terminate the encounter[;]" if so, "then he or she has not been seized." *Drayton,* 536 U.S. at 201, 122 S. Ct. at 2110, 153 L. Ed. 2d at 251.

As the trial court found in denying Defendant's suppression motion, the investigating officers, after following Defendant's vehicle, parked their vehicle directly behind Defendant's vehicle, drew their firearms, and ordered Defendant and his passenger to exit Defendant's vehicle. After Defendant got out of his vehicle, Agent McAbee placed Defendant on the ground and handcuffed him, thereby restraining Defendant's freedom of movement " 'by means of physical force [and] . . . authority' " and creating a situation in which a reasonable person would not have felt free to terminate the encounter. *Brendlin,* 551 U.S. at 254, 127 S. Ct. at 2405, 168 L. Ed. 2d at 138 (quoting *Bostick,* 501 U.S. at 434, 111 S. Ct. at 2386, 115 L. Ed. 2d at 398). Thus, although the officers did not, in fact, initiate a traffic stop, Defendant was "seized" by the agents. As a result, "in order [for the agents] to conduct [such] a warrantless, investigatory stop [of Defendant, they] must have [had] a reasonable and articulable suspicion of criminal activity." *State v. Hughes,* 353 N.C. 200, 206-07, 539 S.E.2d 625, 630 (2000) (citation omitted).[2]

### 2. Validity of Seizure

**[3]** Having concluded that Defendant was seized for Fourth Amendment purposes, we must now address his claim that the investigating officers "lacked . . . reasonable suspicion to accost and frisk him, [so that Defendant's] statements and the physical evidence [seized as a result of that detention] should have been suppressed as the 'fruit of the poisonous tree' of [an] illegal seizure." A careful

---

2. In light of our determination that the investigating officers lacked an adequate justification for detaining Defendant, we need not address his contention that the circumstances surrounding his encounter with the officers constituted a full-scale arrest requiring probable cause rather than an investigative detention.

review of the record convinces us that the investigating officers lacked a sufficient basis for seizing Defendant.[3]

"*Terry v. Ohio* and its progeny have taught us that in order to conduct a warrantless, investigatory stop, an officer must have a reasonable and articulable suspicion of criminal activity." *Hughes*, 353 N.C. at 206-07, 539 S.E.2d at 630 (citing *Terry*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). A law enforcement officer is permitted to conduct a brief stop and frisk of an individual if there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880, 20 L. Ed. 2d at 906. Under the "reasonable articulable suspicion" standard, a stop must " 'be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training.' " *State v. Barnard*, 362 N.C. 244, 247, 658 S.E.2d 643, 645 (quoting *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994)), *cert. denied*, 555 U.S. 914, 129 S. Ct. 264, 172 L. Ed. 2d 198 (2008). For that reason, there must be a "minimal level of objective justification, something more than an 'unparticularized suspicion or hunch,' " *Watkins*, 337 N.C. at 442, 446 S.E.2d at 70 (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1, 10 (1989) (citation and quotation marks omitted)), to justify an investigative detention. Thus, "the ultimate issue before the trial court in a case involving the validity of an investigatory detention is the extent to which the investigating officer has a reasonable articulable suspicion that the defendant might be engaged in criminal activity." *State v. Mello*, 200 N.C. App. 437, 444, 684 S.E.2d 483, 488 (2009), *aff'd*, 364 N.C. 421, 700 S.E.2d 224 (2010). We consider " 'the totality of the circumstances' " in determining whether the requisite reasonable articulable suspicion required for a valid investigative detention exists. *Watkins*, 337 N.C. at 441, 446 S.E.2d at 70 (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621, 629 (1981)).

---

3. Although the State asserts in its brief that the existence of a warrant authorizing Defendant's arrest justified the decision of the investigating officers to take him into custody, it has not cited any authority in support of that proposition and we have not found any such authority in the course of our own research. A careful examination of the record discloses that the investigating officers did not know that this warrant existed at the time that they detained Defendant and decided to detain him because they believed that they had sufficient "reasonable articulable suspicion" to do so. As a result, we take no position concerning the validity of the State's assertion.

"Where the justification for a warrantless stop is information provided by an anonymous informant, a reviewing court must assess whether the tip at issue possessed sufficient indicia of reliability to support the police intrusion on a detainee's constitutional rights." *State v. Johnson*, 204 N.C. App. 259, 263, 693 S.E.2d 711, 715 (2010) (citing *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). "[I]f [the anonymous tip] does not [have sufficient indicia of reliability], then there must be sufficient police corroboration of the tip before the stop may be made." *Hughes*, 353 N.C. at 207, 539 S.E.2d at 630 (citing *Alabama v. White*, 496 U.S. 325, 329, 110 S. Ct. 2412, 2415-16, 110 L. Ed. 2d 301, 308 (1990)). As a result, we must determine (1) whether the anonymous tip provided to Agent McAbee, taken as a whole, possessed sufficient indicia of reliability and, if not, (2) whether the anonymous tip could be made sufficiently reliable by independent corroboration in order to uphold the challenged investigative detention. *Id.* at 209, 539 S.E.2d at 631.

Although determining whether an anonymous tip is sufficiently reliable to justify an investigative detention clearly hinges upon the "totality of the circumstances," the informant's "veracity," "reliability" and "basis of knowledge" are "important factors to consider." *Id.* 353 N.C. at 205, 539 S.E.2d at 629. As a general proposition, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is 'by hypothesis largely unknown, and unknowable.' " *White*, 496 U.S. at 329, 110 S. Ct. at 2415, 110 L. Ed. 2d at 308 (quoting *Gates*, 462 U.S. at 237, 103 S. Ct. at 2332, 76 L. Ed. 2d at 548). Furthermore, a sufficiently reliable anonymous tip should "contain[] a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.' " *Gates*, 462 U.S. at 245, 103 S. Ct. at 2335-36, 76 L. Ed. 2d at 552. Finally, " 'if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.' " *Hughes*, 353 N.C. at 206, 539 S.E.2d at 630 (quoting *White*, 494 U.S. at 330, 110 S. Ct. at 2416, 110 L. Ed. 2d at 309).

"The reasonable suspicion . . . at issue [in an anonymous tip situation] requires that [the] tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Florida v. J.L.*, 529 U.S. 266, 272, 120 S. Ct. 1375, 1379, 146 L. Ed. 2d 254, 261

(2000) (holding that an anonymous telephone call to the effect that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun" did not provide adequate support for an investigative detention given that "[t]he anonymous call . . . provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility," so that "[a]ll the police had to go on . . . was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the suspect]"). "The type of detail provided in the tip and corroborated by the officers is critical in determining whether the tip can supply the reasonable suspicion necessary for the stop. Where the detail contained in the tip merely concerns identifying characteristics, an officer's confirmation of these details will not legitimize the tip." *Johnson*, 204 N.C. App. at 264, 693 S.E.2d at 715 (holding that an anonymous tip to the effect that a "black male suspect wearing a white shirt in a blue Mitsubishi with a certain license plate number" was "selling drugs and guns at the intersection of Pitt and Birch Streets" and that the suspect "had just left the area, but would return shortly," did not suffice to justify an investigative stop of the defendant's car given that there was "nothing inherent in the tip . . . to allow a court to deem it reliable"). A reviewing court is more likely to find that an anonymous tip provides the requisite "reasonable articulable suspicion" when the information provided in the tip is specific and can be substantially corroborated. *White*, 496 U.S. at 332, 110 S. Ct. at 2417, 110 L. Ed. 2d at 310 (upholding an investigative detention based upon an anonymous tip to the effect that (1) the defendant would be carrying drugs in a brown attaché case; (2) the defendant would be leaving a specific apartment address and room number; (3) the defendant would be leaving her room at a specific time, (4) the defendant's car had a detailed description; and (5) the specific destination to which the defendant would travel, with all of these details having been subsequently confirmed through surveillance).

After analyzing the totality of the circumstances before us in this case, we conclude that the anonymous tip at issue here did not "exhibit sufficient indices of reliability . . . ." *Johnson*, 204 N.C. App. at 264, 693 S.E.2d at 715. The tip in question simply provided that Defendant would be selling marijuana at a certain location on a certain day and would be driving a white vehicle. "The record contains no information about who the caller was, no details about what the caller had seen, and no information even as to where the caller was

located." *State v. Peele*, 196 N.C. App. 668, 673, 675 S.E.2d 682, 686, *disc. review denied*, 363 N.C. 587, 683 S.E.2d 383 (2009). Unlike the anonymous tip determined to be sufficient in *White*, the tip in this case lacked any detail concerning the nature of Defendant's present and planned activities, such as the time at which Defendant would be at the gas station, the type of vehicle that Defendant would be driving, the identity of the person to whom the sale would be made, or the manner in which the sale would be conducted. Put another way, "while the tip at issue [here] included identifying details of a person and car allegedly engaged in illegal activity, it offered few details of the alleged crime, no information regarding the informant's basis of knowledge, and scant information to predict the future behavior of the alleged perpetrator." *Johnson*, 204 N.C. App. at 263, 693 S.E.2d at 714-15. As a result, since nothing inherent in the tip itself provided investigating officers with the "reasonable articulable suspicion" required to justify detaining Defendant, the only way that Defendant's detention could be upheld would be in the event that the tip contained sufficient details, corroborated by the investigating officers, to warrant a reasonable belief that Defendant was engaging in criminal activity.

Nothing in the subsequent activities of the investigating officers "buttressed" the tip through "sufficient police corroboration." *Hughes*, 353 N.C. at 207, 539 S.E.2d at 630. The information obtained by or known to Agent McAbee prior to observing Defendant at the convenience store did not provide any additional particularized justification for detaining him. Agent McAbee's knowledge of Defendant's previous drug activity, which consisted of "talking to" unnamed individuals in the community, was not specific in nature and did nothing more than indicate that, as a general matter, Defendant engaged in the business of selling controlled substances. Upon arriving at the convenience store, investigating officers observed a white vehicle driven by an individual identified as Defendant backing out of a parking space. The observations made by the investigating officers at the convenience store consisted of nothing more than identifying a "determinate person" at a determinate location, a degree of corroboration that does not suffice to justify an investigative detention. *J.L.*, 529 U.S. at 272, 120 S. Ct. at 1379, 146 L. Ed. 2d at 261 (stating that "an accurate description of a subject's readily observable location, while "reliable" by "help[ing] the police correctly identify the person whom the tipster means to accuse," "does not show that the tipster has knowledge of concealed criminal activity"). Although Agent McAbee watched Defendant drive away from the convenience store and ultimately pull his vehicle into the driveway of a residence with an

address that differed from his own, Defendant could just as easily have been visiting an acquaintance, giving Mr. White a ride home, or turning around as opposed to engaging in evasive or unlawful conduct. Thus, "the information provided [and known to Agent McAbee prior to the seizure] did not contain the 'range of details' required by White and Gates to sufficiently predict [D]efendant's specific future action[;]"it "was . . . peppered with uncertainties and generalities." *Hughes*, 353 N.C. at 208, 539 S.E.2d at 631. Therefore, "given the limited details contained in the tip, and the failure of the officers to corroborate the tip's allegations of illegal activity, the tip lacked sufficient indicia of reliability to justify the warrantless stop in this case." *Johnson*, 204 N.C. App. at 263, 693 S.E.2d at 715. As a result, the investigating officers lacked the "reasonable articulable suspicion" necessary to support their decision to detain Defendant.[4]

### 3. Plain Error

**[4]** "Evidence that is discovered as a direct result of an illegal search or seizure is generally excluded at trial as fruit of the poisonous tree unless it would have been discovered regardless of the unconstitutional search." *State v. Jackson*, 199 N.C. App. 236, 244, 681 S.E.2d 492, 497 (2009). "[I]f a person is illegally arrested [or seized], any inculpatory statement he makes [or evidence obtained during and after that time] must be suppressed unless the State can show the causal chain was broken by some independent circumstance which will show the statement was not caused by the arrest [or seizure]." *State v. Allen*, 332 N.C. 123, 128, 418 S.E.2d 225, 228 (1992). In other words, we must determine " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *State v. Barnard*, 184 N.C. App. 25, 40, 645 S.E.2d 780, 790 (2007) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 417, 9 L. Ed. 2d 441, 455 (1963) (quotation marks and citation omitted)), *aff'd*,

---

4. In seeking to persuade us to reach a different result, the State relies upon *State v. Garcia*, 197 N.C. App. 522, 530-31, 677 S.E.2d 555, 560 (2009), in which we upheld the validity of an investigative detention because "Detective Jones corroborated . . . information in the anonymous tips [to the effect that marijuana was being sold at a particular residence] through [examination of material contained in a computer database] and her days of surveillance at" the residence and passed the information along to other officers, who "followed [the d]efendant to a location known for drug activity." *Garcia* is readily distinguishable from the present case, however, since there is no evidence in the present record to the effect that the convenience store was "a location known for drug activity" and since the investigating officers did not observe the sort of activity detected during the surveillance which occurred in *Garcia* before detaining Defendant.

362 N.C. 244, 658 S.E.2d 643, *cert. denied*, 555 U.S. 914, 129 S. Ct. 264, 172 L. Ed. 2d 198 (2008).

A careful review of the record demonstrates that Defendant's statement admitting that he had sold marijuana at the convenience station directly resulted from the investigating officers' decision to detain him. Similarly, Defendant's subsequent decision to consent to the search of his residence, resulting in the discovery of the rifle and the seizure of various controlled substances, directly resulted from the investigating officers' detention of Defendant. For that reason, the challenged evidence could not have been discovered " 'by means sufficiently distinguishable to be purged of the primary taint,' " *Id.* (quoting *Wong Sun*, 371 U.S. at 488, 83 S. Ct. at 417, 9 L. Ed. 2d at 455), and should have been suppressed. Moreover, absent the admission of the evidence obtained as a result of the unlawful investigative detention, the record would probably not have contained sufficient evidence to establish Defendant's guilt of the offenses for which he was convicted.[5] N.C. Gen. Stat. § 14-415.1; N.C. Gen. Stat. § 90-95(a) and (d)(2). For that reason, Defendant has shown that a "different result probably would have been reached but for the [trial court's] error" in admitting the challenged evidence. *Bishop*, 346 N.C. at 385, 488 S.E.2d at 779. As a result, the trial court committed plain error by admitting the challenged evidence, so that Defendant is entitled to a new trial[6] and to have the forfeiture order vacated pending further proceedings in the Buncombe County Superior Court. *State v. Burrow*, ____ N.C. App. ____, ____, 721 S.E.2d 356, 360 (holding that the trial court committed plain error by admitting testimony and a laboratory report concerning the extent to which a particular substance was a controlled substance in violation of the Confrontation Clause given that, "[a]bsent the erroneous admission of the . . . report and testimony regarding the report, no chemical analysis evidence was presented to the jury to show the pills [the defendant allegedly possessed] were oxycodone"), *temporary stay allowed*, ____ N.C. ____, 722 S.E.2d 209 (2012).[7]

---

5. Aside from a generalized assertion that the trial court did not err, much less commit plain error, in admitting the challenged evidence, the State did not advance any argument in its brief specifically explaining why any error committed by the trial court did not rise to the level of plain error.

6. Having granted Defendant a new trial on plain error grounds, we need not address his ineffective assistance claim. *See State v. Ewell*, 168 N.C. App. 98, 106, 606 S.E.2d 914, 920, *disc. review denied*, 359 N.C. 412, 612 S.E.2d 326 (2005).

7. Since N.C. Gen. Stat. § 90-112(a)(2), the relevant forfeiture statute, "is a criminal, or *in personam*, forfeiture statute" and since "[c]riminal forfeiture . . . must follow

### III. Conclusion

Thus, for the reasons set forth above, we conclude that the trial court committed plain error by admitting the challenged evidence. As a result, Defendant is entitled to a new trial and to have the order of forfeiture vacated pending further proceedings in the court below.

NEW TRIAL; ORDER OF FORFEITURE VACATED.

JUDGES ROBERT C. HUNTER and STROUD concur.

---

criminal conviction", *State v. Johnson,* 124 N.C. App. 462, 476, 478 S.E.2d 16, 25 (1996), *cert. denied,* 345 N.C. 758, 485 S.E.2d 304 (1997), we need not address Defendant's challenge to the trial court's forfeiture order in any detail.