INMAN, Judge.
 

 *233
 
 The trial court did not commit plain error by allowing evidence of a handgun a police officer removed from the waistband of a man in the course of stopping, seizing, and frisking him after forming a reasonable articulable suspicion that the suspect may have been engaged in unlawful conduct and was armed and dangerous.
 

 *668
 
 Terance Germaine Malachi ("Defendant") appeals from his conviction for possession of a firearm by a felon following a jury trial and a related conviction for attaining habitual felon status. This is this Court's
 
 *234
 
 second decision regarding Defendant's appeal, to resolve an issue not addressed in our initial decision.
 

 Defendant argues that the trial court committed plain error by allowing the jury to hear evidence obtained as a result of an unconstitutional stop and seizure of Defendant. After careful review of the record and applicable law, we conclude that Defendant has failed to demonstrate plain error.
 

 Factual and Procedural Background
 

 An expanded summary of the factual and procedural background of this appeal can be found in our initial decision in
 
 State v. Malachi
 
 , --- N.C. App. ----,
 
 799 S.E.2d 645
 
 (2017),
 
 rev'd and remanded
 
 , --- N.C. ----,
 
 821 S.E.2d 407
 
 (2018). Below we summarize the facts and procedure pertinent to the single issue before us.
 

 The evidence at trial tended to show the following:
 

 Shortly after midnight on 14 August 2014, the Charlotte-Mecklenburg Police Department received a 911 call from an anonymous caller. The caller told the dispatcher that in the rear parking lot of a gas station located at 3416 Freedom Drive in Charlotte, North Carolina, an African American male wearing a red shirt and black pants had just placed a handgun in the waistband of his pants.
 

 Officer Ethan Clark, in uniform and a marked car, first responded to the call. Officer Clark's arrival was followed almost immediately by Officer Jason Van Aken. Officer Clark saw about six to eight people standing in the parking lot, including a person who matched the description provided to the dispatcher and who was later identified as Defendant.
 

 When Officer Clark got out of his car, Defendant looked directly at him, "bladed, turned his body away, [and] started to walk away." Officer Clark immediately approached Defendant and grabbed his arm. Officer Van Aken held Defendant's other arm and the two officers walked Defendant away from the crowd of people. Defendant was squirming. Officer Clark told Defendant to relax. Prior to this, neither officer spoke with Defendant.
 

 Officer Clark placed Defendant in handcuffs and told him that he was not under arrest. Officer Van Aken then frisked Defendant and pulled a revolver from his right hip waistband. As the two officers seized the revolver, a third officer, Officer Kevin Hawkins, arrived. The officers then told Defendant he was under arrest and placed him in the back of Officer Clark's patrol vehicle.
 

 *235
 
 Defendant was tried before a jury on charges of carrying a concealed weapon and possession of a firearm by a felon. Before evidence was presented, Defendant filed a motion to suppress all evidence of the revolver and argued that a police officer may not legally stop and frisk anyone based solely on an anonymous tip that simply described the person's location and description but that did not report any illegal conduct by the person. The trial court denied the motion. The State presented the challenged evidence at trial without objection by Defendant.
 

 The jury returned a verdict of not guilty on the charge of carrying a concealed weapon and guilty of possession of a firearm by a felon. Defendant then pleaded guilty, pursuant to
 
 N.C. v. Alford
 
 ,
 
 400 U.S. 25
 
 ,
 
 91 S.Ct. 160
 
 ,
 
 27 L.Ed.2d 162
 
 (1970), to attaining habitual felon status. The trial court sentenced Defendant in the mitigated range to 100 to 132 months of imprisonment.
 

 Analysis
 

 Defendant argues that the trial court committed plain error by allowing the jury to hear evidence of the revolver police removed from his waistband in the course of stopping and frisking him in violation of his Fourth Amendment rights. Defendant concedes that because, after the trial court denied his motion to suppress this evidence, his trial counsel did not object when the evidence was offered at trial, our review is limited to plain error analysis. Our Supreme Court has recently reiterated the standards applicable to plain error review:
 

 [T]o demonstrate that a trial court committed plain error, the defendant must show that a fundamental error occurred at trial. To show fundamental error, a defendant
 
 *669
 
 must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Further, ... because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings.
 

 State v. Maddux
 
 , --- N.C. ----, ----,
 
 819 S.E.2d 367
 
 , 371 (2018) (citations and quotation marks omitted) (second alteration in original). In applying this standard to the denial of a motion to suppress, "[o]ur review ... is 'strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are binding on appeal, and whether those factual findings in turn
 
 *236
 
 support the judge's ultimate conclusions of law.' "
 
 State v. Williams
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 419
 
 , 425 (2016) (quoting
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982) ). Those conclusions of law are reviewable
 
 de novo
 
 .
 
 Williams
 
 , --- N.C. App. at ----,
 
 786 S.E.2d at 425
 
 .
 

 We hold that the trial court did not err, much less commit plain error, in denying Defendant's motion to suppress. This case is fundamentally controlled by
 
 Terry v. Ohio
 
 ,
 
 392 U.S. 1
 
 ,
 
 88 S.Ct. 1868
 
 ,
 
 20 L.Ed.2d 889
 
 (1968), in which the Supreme Court of the United States held a police officer did not violate the Fourth Amendment to the United States Constitution when he stopped an individual and frisked him for weapons without probable cause.
 
 392 U.S. at 30-31
 
 ,
 
 88 S.Ct. at 1884-85
 
 ,
 
 20 L.Ed.2d at 911
 
 . Under
 
 Terry
 
 , a stop-and-frisk of an individual passes constitutional muster if: (1) the stop, at its initiation, was premised on a reasonable suspicion that crime may have been afoot; and (2) the officer possessed a reasonable suspicion that the individual involved was armed and dangerous.
 
 See, e.g.,
 

 State v. Johnson
 
 ,
 
 246 N.C. App. 677
 
 , 686,
 
 783 S.E.2d 753
 
 , 760 (2016) (noting that "[p]ursuant to
 
 Terry
 
 , [an officer's] frisk of [a] defendant may only be justified by [these] two independent criteria"). Thus, Officers Clark and Van Aken lawfully stopped and frisked Defendant if they possessed reasonable suspicion: (1) that Defendant may have been involved in criminal activity at the time of the stop; and (2) that Defendant was armed and dangerous.
 

 To satisfy the first element, the officer's reasonable suspicion must be "supported by articulable facts that criminal activity '
 
 may
 
 be afoot.' "
 
 United States v. Sokolow
 
 ,
 
 490 U.S. 1
 
 , 7,
 
 109 S.Ct. 1581
 
 , 1585,
 
 104 L.Ed.2d 1
 
 , 10 (1989) (emphasis added). Although "[t]he concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules[,]' " it is not without limitation and definition:
 

 The officer, of course, must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.' " The Fourth Amendment requires "some minimal level of objective justification" for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means "a fair probability that contraband or evidence of a crime will be found," and the level of suspicion required for a
 
 Terry
 
 stop is obviously less demanding than that for probable cause.
 

 Id.
 

 (citations omitted). Whether or not probable cause existed to execute the stop is determined "after considering the totality of circumstances
 
 *237
 
 known to the officer."
 
 State v. Jackson
 
 ,
 
 368 N.C. 75
 
 , 78,
 
 772 S.E.2d 847
 
 , 849 (2015).
 

 Binding precedent requires the conclusion that the anonymous tip was insufficient, by itself, to supply Officer Clark with reasonable suspicion to stop Defendant. Although he was able to identify Defendant based on the tip, it did not indicate any illegal activity sufficient to give rise to reasonable suspicion standing alone:
 

 [a]n accurate description of a subject's readily observable location and appearance [in an anonymous tip] is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion
 
 *670
 
 of illegality, not just in its tendency to identify a determinate person.
 

 Florida v. J.L.
 
 ,
 
 529 U.S. 266
 
 , 272,
 
 120 S.Ct. 1375
 
 , 1379-80,
 
 146 L.Ed.2d 254
 
 , 261 (2000). In
 
 J.L.
 
 , police received an anonymous tip that a young black male in a plaid shirt waiting at a bus stop was carrying a firearm.
 

 Id.
 

 at 268
 
 ,
 
 120 S.Ct. at 1377
 
 ,
 
 146 L.Ed.2d at 258
 
 . Officers arrived at the scene, identified an individual matching that description, and, with "no reason to expect ... illegal conduct" or any "threatening or unusual movements" on anyone's part, stopped the individual and frisked him, discovering a gun.
 

 Id.
 

 The defendant, a juvenile, was charged with possessing a firearm without a license and possessing a firearm while under the age of 18.
 

 Id.
 

 at 269
 
 ,
 
 120 S.Ct. at 1377-78
 
 ,
 
 146 L.Ed.2d at 259
 
 . The Supreme Court held that this stop and frisk violated the Fourth Amendment, as the anonymous tip failed to reliably indicate illegal possession of a firearm such that it, standing alone, could provide reasonable suspicion to institute a
 
 Terry
 
 stop.
 

 Id.
 

 at 274
 
 ,
 
 120 S.Ct. at 1380-81
 
 ,
 
 146 L.Ed.2d at 262
 
 .
 

 But the officers' suspicion in this case was based on more than an anonymous tip. Unlike in
 
 J.L.
 
 , the record below and the trial court's findings disclose facts beyond the anonymous tip to support Officer Clark's reasonable suspicion that Defendant illegally possessed a firearm, including those facts specifically identified by the Supreme Court as lacking in that case. The unchallenged findings of fact made by the trial court and the uncontroverted evidence disclose that Officer Clark arrived on the scene in full uniform and a marked police car before making eye contact with Defendant. As Officer Clark was exiting his car, the Defendant "turned his body in such a way as to prevent the officer from observing a weapon." Officer Clark testified that he was trained
 
 *238
 
 "on ... some of the characteristics of armed suspects[,]" and that this kind of turn was known as "blading," as "[w]hen you have a gun on your hip you tend to blade it away from an individual. One of the indicators [of an armed person] is you turn and have your body between the other person and the firearm you're carrying." Defendant next began to move away. Officer Van Aken, who by then was on the scene, approached Defendant with Officer Clark; at no point prior to or during the approach did Defendant inform the officers that he was lawfully armed as required by our concealed carry statutes.
 
 See
 

 N.C. Gen. Stat. § 14-415.11
 
 (a) (2017) ("[W]henever the person is carrying a concealed handgun, [the person] shall disclose to any law enforcement officer that the person ... is carrying a concealed handgun
 
 when approached
 
 or addressed by the officer[.]" (emphasis added)).
 
 [1]
 

 Although we are unable to identify a prior North Carolina appellate decision holding reasonable suspicion existed under these particular facts, each individual fact present here has been cited to support a conclusion of reasonable suspicion as part of a totality of the circumstances analysis.
 
 See, e.g.,
 

 *671
 

 State v. Butler
 
 ,
 
 331 N.C. 227
 
 , 233,
 
 415 S.E.2d 719
 
 , 722 (1992) ("[U]pon making eye contact with the uniformed officers, defendant immediately moved away, behavior that is evidence of flight[.]");
 
 State v. Garcia
 
 ,
 
 197 N.C. App. 522
 
 , 529,
 
 677 S.E.2d 555
 
 , 559 (2009) ("Factors to determine whether reasonable suspicion existed include ... unprovoked flight." (citation omitted));
 
 State v. Watson
 
 ,
 
 119 N.C. App. 395
 
 , 398,
 
 458 S.E.2d 519
 
 , 522 (1995) ("[A]n officer's experience and
 
 *239
 
 training can create reasonable suspicion. Defendant's actions must be viewed through the officer's eyes." (citation omitted));
 
 State v. Sutton
 
 ,
 
 232 N.C. App. 667
 
 , 681-82,
 
 754 S.E.2d 464
 
 , 473 (2014) (holding that the defendant's "posturing [which] made it apparent that he was concealing something on his person" and subsequent failure to comply with Section 14-415.11(a) when approached, in addition to other facts in a totality of the circumstances analysis, gave rise to reasonable suspicion to conduct an investigatory stop). Given Defendant's "blading" after making eye contact with Officer Clark in his marked car and uniform, Defendant's movements away from Officer Clark as he was being approached, Officer Clark's training in identifying armed suspects, and Defendant's failure to comply with Section 14-415.11(a) when approached by the officers, we hold that the officers had reasonable suspicion under the totality of the circumstances to conduct an investigatory stop of Defendant in response to the tip identifying him as possessing a firearm at the gas station.
 

 We now turn to whether the officers possessed reasonable suspicion that Defendant was armed and dangerous such that they were lawfully permitted to frisk him. We hold that such reasonable suspicion existed in accordance with North Carolina precedent and persuasive federal authority. In
 
 State v. Rinck
 
 ,
 
 303 N.C. 551
 
 ,
 
 280 S.E.2d 912
 
 (1981), the North Carolina Supreme Court observed that "[i]f upon detaining [an] individual [pursuant to a lawful
 
 Terry
 
 stop], the officer's personal observations confirm that criminal activity may be afoot and suggest that the person detained may be armed, the officer may frisk him as a matter of self-protection."
 
 303 N.C. at 559
 
 ,
 
 280 S.E.2d at 919
 
 (citations omitted). This is certainly true where the officer has reasonable suspicion to believe the individual seized is unlawfully armed.
 
 See
 

 Sutton
 
 ,
 
 232 N.C. App. at 683-84
 
 ,
 
 754 S.E.2d at 474
 
 (holding that facts giving rise to reasonable suspicion that the defendant was unlawfully carrying a firearm also supported a reasonable suspicion that the defendant was armed and dangerous).
 

 The United States Court of Appeals for the Fourth Circuit has held, in an
 
 en banc
 
 decision, that an officer may lawfully conduct a frisk following a
 
 Terry
 
 stop if he "reasonably suspect[s] that the person is
 
 armed and therefore dangerous
 
 .... [T]he risk of danger is created simply because the person, who was forcibly stopped, is armed."
 
 United States v. Robinson
 
 ,
 
 846 F.3d 694
 
 , 700,
 
 cert. denied
 
 , --- U.S. ----,
 
 138 S.Ct. 379
 
 ,
 
 199 L.Ed.2d 277
 
 (2017) (underline in original). The Fourth Circuit also rejected the argument, raised by Defendant here, that a state's laws allowing for the public carrying of firearms might deprive the officer of reasonable suspicion:
 

 *240
 
 [T]he risk inherent in a forced stop of a person who is armed exists even when the firearm is legally possessed. The presumptive lawfulness of an individual's gun possession in a particular State does next to nothing to negate the reasonable concern an officer has for his own safety when forcing an encounter with an individual who is armed with a gun and whose propensities are unknown.
 

 Id.
 

 at 701 (citing
 
 United States v. Rodriguez
 
 ,
 
 739 F.3d 481
 
 , 491 (10th Cir. 2013) ).
 

 As set forth
 
 supra
 
 , Officers Clark and Van Aken had reasonable suspicion to believe that Defendant unlawfully possessed a firearm at the time they stopped him. This reasonable suspicion of unlawful possession, coupled with Defendant's struggling during the stop and his continued failure to inform the officers that he was armed as required by Section 14-415.11(a), convince us that the officers also possessed reasonable suspicion to frisk him as a potentially armed and dangerous individual.
 
 Sutton
 
 ,
 
 232 N.C. App. at 683-84
 
 ,
 
 754 S.E.2d at 474
 
 .
 

 Conclusion
 

 For the above reasons, we hold the trial court did not err, much less commit plain
 
 *672
 
 error, in denying Defendant's motion to suppress or in allowing the jury to hear evidence challenged in the motion to suppress.
 

 NO PLAIN ERROR.
 

 Judges ARROWOOD and HAMPSON concur.
 

 [1]
 

 Defendant argues that the trial court failed to make specific findings of fact that Defendant was aware that Officer Clark was a police officer, that he was aware Officer Clark was approaching him, or that he had time to speak with officers Clark and Van Aken before his seizure. However, the uncontroverted evidence of record shows that: (1) Defendant looked Officer Clark in the eyes; (2) Officer Clark was in full uniform and a marked vehicle; (3) Defendant "squared" to Officer Clark when he looked at him before blading his body; and (4) Defendant began to move away from Officer Clark as he was exiting the vehicle and approaching Defendant. There was no evidence introduced that Defendant was facing away from Officer Clark when he arrived, only that Defendant "bladed" by turning away, placing his body between Officer Clark and the firearm; Officer Clark testified that "when [he] exited [his] vehicle is when [Defendant]
 
 turned and bladed
 
 his body away." Thus, there is no evidence establishing that Clark approached Defendant from behind rather than from the side, or that Defendant walked away in the direct opposite direction from Officer Clark rather than a perpendicular one, such that Defendant would be unaware of his advance. Defendant declined to introduce any conflicting evidence as to what transpired, and "[i]n that event, the necessary findings are implied from the admission of the challenged evidence."
 
 State v. Vick
 
 ,
 
 341 N.C. 569
 
 , 580,
 
 461 S.E.2d 655
 
 , 661 (1995). As we must view this uncontroverted evidence in the light most favorable to the State,
 
 State v. Hunter
 
 ,
 
 208 N.C. App. 506
 
 , 509,
 
 703 S.E.2d 776
 
 , 779 (2010), the trial court found those facts concerning the issues identified by Defendant, to the extent that any were necessary, by implication in admitting the evidence.