IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-595

No. COA20-170

Filed 2 November 2021

Forsyth County, Nos. 17 CRS 003215, 058659-61

STATE OF NORTH CAROLINA

v.

JOSEPH DONALD ROYSTER, III, Defendant.

Appeal by Defendant from judgment entered 30 October 2019 by Judge Casey Viser in Forsyth County Superior Court. Heard in the Court of Appeals 9 September 2020.

*Attorney General Joshua H. Stein, by Associate Attorney General Robert J. Pickett, for the State.*

*Vitrano Law Offices, PLLC, by Sean P. Vitrano, for defendant-appellant.*

MURPHY, Judge.

¶ 1         Before law enforcement officers may perform an investigatory stop on someone without a warrant, the United States Constitution and North Carolina Constitution require that they have reasonable articulable suspicion that criminal activity is afoot. Reasonable articulable suspicion can arise through an anonymous tip if the tip has sufficient indicia of reliability and suggests criminal activity is afoot. Reasonable articulable suspicion may also exist where the totality of the circumstances suggests

criminal activity is afoot. Evidence that is illegally obtained as a result of an unconstitutional stop without reasonable articulable suspicion must be suppressed. Here, the totality of the circumstances indicated Defendant unlawfully possessed a weapon, providing law enforcement with reasonable articulable suspicion to stop Defendant. As a result, the stop was constitutional and the trial court did not err in denying Defendant's motion to suppress.

## BACKGROUND

On 2 January 2018, a grand jury indicted Defendant Joseph Donald Royster III for possession of a firearm by a felon; trafficking opium or heroin by possession; trafficking cocaine by possession; manufacturing, selling, delivering, or possessing a controlled substance within 1,000 feet of a school; possession of a weapon on school property; possession with intent to sell or deliver cocaine; possession with intent to sell or deliver heroin; and attaining the status of habitual felon. On 29 May 2018, Defendant filed a *Motion to Suppress Evidence*, arguing law enforcement did not have reasonable articulable suspicion to stop Defendant and the trial court should suppress the evidence that was subsequently discovered as a result of the stop. A hearing on the motion to suppress was held on 7 December 2018, and the trial court denied the motion in its *Order Denying Motion to Suppress* ("Order"), filed on 9 October 2019. The Order included the following findings of facts, which are

unchallenged on appeal[1]:

> 1. On [2 January 2018], [Defendant] was indicted by a grand jury on charges of: possession of a weapon on school property, possession of cocaine with intent to sell and deliver, and possession of heroin with intent to sell and deliver.
>
> 2. [] Defendant was arrested on [16 September 2017], after officers found him in possession of a firearm, heroin and cocaine on school property.
>
> 3. Earlier that day, the Winston-Salem Police Department . . . received a detailed anonymous report . . . from a caller who stated that a black male named Joseph Royster, who goes by "Gooney," had heroin and a gun in his vehicle, which the caller described as a black Chevrolet Impala with [a specified] license plate number [].
>
> 4. The caller described the black male as wearing a white T-shirt and blue jeans, with gold teeth and a gold necklace. The caller also reported that the heroin and the gun were located in the armrest of the black Chevrolet Impala, which was parked near the premises of South Fork Elementary School . . . .
>
> 5. Based on [the] anonymous report, several officers from the Department responded to the scene at South Fork Elementary, including: Sgt. Ryan Phillips, Officer C.I. Penn, Officer Harrison, and Officer Robertson.
>
> 6. Sgt. Phillips is a patrol [s]upervisor with more than 13

---

[1] We note that Defendant explicitly concedes Findings of Fact 3-9 and 11-21 "were supported by the evidence at the suppression hearing[.]" He does not address Findings of Fact 1, 2, or 10, as he only made this statement regarding the "pertinent findings of fact[.]" These unchallenged findings of fact are also binding on appeal. *See State v. Warren*, 242 N.C. App. 496, 498, 775 S.E.2d 362, 364 (2015) (marks omitted) ("Unchallenged findings of fact are deemed to be supported by competent evidence and are binding on appeal."), *aff'd per curiam*, 368 N.C. 756, 782 S.E.2d 509 (2016), *cert. denied*, 196 L. Ed. 2d 261 (2016).

years of experience with the Department, including S.W.A.T., who also previously served as a New York City Police Officer. He has participated in 300-400 drug crime investigations, and participated in 75-100 arrests.

7. As the supervising officer on duty, Sgt. Phillips responded first to the call.

8. After receiving the anonymous report on [16 September 2017], and prior to arriving at South Fork Elementary, Sgt. Phillips searched the Department's database, the PISTOL database, for information on [Defendant].

9. Through the PISTOL database, Sgt. Phillips found a picture of [Defendant], which showed him as a black male with gold teeth. The PISTOL database also showed that [Defendant] had a history of drug charges, and a charge for possession of a firearm by a felon.

10. South Fork Elementary is a school located in Forsyth County, North Carolina.

11. When Sgt. Phillips arrived at South Fork Elementary, he exited his vehicle on foot and located a black Chevrolet Impala with the [specified] license plate number [], as described in the anonymous report, backed into a parking spot near the school. A youth football game was in progress at the school.

12. The black Chevrolet Impala was not occupied at the time, and Sgt. Phillips positioned himself approximately 40-50 yards from the black Chevrolet Impala to watch for anyone who approached the vehicle.

13. Meanwhile, as Sgt. Phillips located the Impala, Officer Penn and his supervising officer accompanying him in his vehicle, Officer Robertson, met with Officer Harrison, who was in a separate vehicle.

14. Officer Penn retrieved the same information through

the PISTOL database that Sgt. Phillips retrieved, and also verified [Defendant's] identity through his picture in the database.

15. Officers Penn and Robertson, and Officer Harrison, positioned themselves across the street, waiting for instructions from Sgt. Phillips.

16. As Sgt. Phillips watched the black Chevrolet Impala, a black male wearing a white T-shirt and blue jeans with a gold necklace and gold teeth -- matching the description in the anonymous report -- approached the black Chevrolet Impala and opened the door. Sgt. Phillips then radioed for the other officers to join him on the scene as the black male was getting into the black Chevrolet Impala.

17. Sgt. Phillips then approached the black Chevrolet Impala, and as he did so the black male exited the vehicle. While the black male was standing next to the black Chevrolet Impala, Sgt. Phillips called out [Defendant's] name, whereupon the black male turned around and looked at Sgt. Phillips. The black male then reached inside the black Chevrolet Impala, turned the vehicle off, and shut the door.

18. The black male then began walking away as Sgt. Phillips walked toward him. With his back to Sgt. Phillips, the black male reached for his waistband.

19. Sgt. Phillips warned the black male, "Don't be reaching for your waistband."

20. Based on Sgt. Phillips' training and experience, in addition to the anonymous report that was received and the other corroborated information obtained by Sgt. Phillips regarding prior charges against [Defendant], Sgt. Phillips suspected the potential presence of a firearm.

21. The black male, who Sgt. Phillips identified as [Defendant], was anxious, upset, and "antsy." Sgt. Phillips

and Officer Harrison frisked [Defendant] for weapons for the safety of the officers, and informed [Defendant] they were detaining him for a narcotics investigation.

¶ 3     The Order included the following conclusions of law:

1. The [trial court] has jurisdiction over [] Defendant and the subject matter[.]

2. Based on the totality of [the] circumstances, including the detailed anonymous report and the information contained therein that was corroborated by Sgt. Phillips and the other officers, Sgt. Phillips' training and experience in investigating drug crimes, and [] Defendant's turning and walking away from the officers upon making eye contact with Sgt. Phillips and then reaching for his waistband, the officers had reasonable suspicion to conduct an investigatory stop of Defendant.

3. As a result, Defendant's Motion to Suppress based on lack of reasonable suspicion for the stop should be denied.

¶ 4     Defendant pled guilty to all charges on 30 October 2019, reserved his right to appeal the denial of his motion to suppress, and subsequently gave notice of appeal in open court. The trial court sentenced Defendant to an active term of 76-104 months.

## ANALYSIS

¶ 5     On appeal, Defendant contends the trial court erred by denying his motion to suppress as "[t]he officers could not lawfully conduct an investigatory stop of [Defendant] without a reasonable articulable suspicion of criminal activity." Defendant contends this rendered the stop illegal and the evidence resulting from it

should have been suppressed under the fruit of the poisonous tree doctrine, requiring us to reverse the Order and vacate his convictions premised upon his guilty plea. As noted above, Defendant does not challenge any findings of fact in the Order and instead challenges only the conclusions of law reached by the trial court.

Review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial [court's] underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the [trial court's] ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "Unchallenged findings of fact are deemed to be supported by competent evidence and are binding on appeal. Conclusions of law are reviewed de novo and are subject to full review." *Warren*, 242 N.C. App. at 498, 775 S.E.2d at 364 (marks omitted).

## A. Reasonable Articulable Suspicion

The trial court based Conclusion of Law 2, that reasonable articulable suspicion existed for the stop, on

> the totality of [the] circumstances, including the detailed anonymous report and the information contained therein that was corroborated by Sgt. Phillips and the other officers, Sgt. Phillips' training and experience in investigating drug crimes, and [] Defendant's turning and walking away from the officers upon making eye contact with Sgt. Phillips and then reaching for his waistband[.]

Although not explicitly discussed in Conclusion of Law 2, the totality of the

circumstances here also includes Defendant's PISTOL database records,[2] which showed Defendant's prior drug charges and a prior firearm charge.

¶ 8      The United States and North Carolina Constitutions protect persons from "unreasonable searches and seizures[.]"  U.S. Const. amend. IV; N.C. Const. art. 1, § 20.

> Though the language in the North Carolina Constitution (Article I, Sec. 20), providing in substance that any search or seizure must be "supported by evidence," is markedly different from that in the federal constitution, there is no variance between the search and seizure law of North Carolina and the requirements of the Fourth Amendment as interpreted by the Supreme Court of the United States.

*State v. Hendricks*, 43 N.C. App. 245, 251-52, 258 S.E.2d 872, 877 (1979), *disc. rev. denied*, 299 N.C. 123, 262 S.E.2d 6 (1980).  "In analyzing what constitutes a reasonable seizure, the United States Supreme Court has consistently held that a police officer may effect a brief investigatory seizure of an individual where the officer has reasonable, articulable suspicion that a crime may *be underway*."  *State v. Horton*, 264 N.C. App. 711, 715, 826 S.E.2d 770, 773 (2019) (emphasis added) (marks omitted). "Under the reasonable articulable suspicion standard, a stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as

---

[2] At the motion to suppress hearing, testimony described the PISTOL database as a searchable police database that provides a person's information, comprised of, in part, their fifteen most recent contacts with law enforcement, including charges.

viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Harwood*, 221 N.C. App. 451, 458, 727 S.E.2d 891, 898 (2012) (marks omitted). "For that reason, there must be a minimal level of objective justification, something more than an unparticularized suspicion or hunch to justify an investigative detention." *Id.* (marks and citations omitted). "A court must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion to make an investigatory stop exists." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citing *United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981)).

**1. The Anonymous Call**

¶ 9        Defendant argues the anonymous call did not demonstrate reliability and, instead, merely described identifying characteristics. The State argues the anonymous call was sufficiently reliable since it was made by phone, identified a specific person with whom the anonymous caller had some demonstrated familiarity, and provided his real-time location.

¶ 10        "Where the justification for a warrantless stop is information provided by an anonymous informant, a reviewing court must assess whether the tip at issue possessed sufficient indicia of reliability to support the police intrusion on a detainee's constitutional rights." *State v. Johnson*, 204 N.C. App. 259, 263, 693 S.E.2d 711, 715 (2010) (citing *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527 (1983)). "If the

anonymous tip does not have sufficient indicia of reliability, then there must be sufficient police corroboration of the tip before the stop may be made." *Harwood*, 221 N.C. App. at 459, 727 S.E.2d at 898. "As a result, we must determine (1) whether the anonymous tip provided to [the police], taken as a whole, possessed sufficient indicia of reliability and, if not, (2) whether the anonymous tip could be made sufficiently reliable by independent corroboration in order to uphold the challenged investigative detention." *Id.*; *see also Horton*, 264 N.C. App. at 717, 826 S.E.2d at 775 (quoting *State v. Hughes*, 353 N.C. 200, 207, 539 S.E.2d 625, 630 (2000)) ("Indices of reliability can come in two forms: (1) the tip itself provides enough detail and information to establish reasonable suspicion, or (2) though the tip lacks independent reliability, it is 'buttressed by sufficient police corroboration.'").

> The type of detail provided in the tip and corroborated by the officers is critical in determining whether the tip can supply the reasonable suspicion necessary for the stop. Where the detail contained in the tip merely concerns identifying characteristics, . . . confirmation of these details will not legitimize the tip.

*Johnson*, 204 N.C. App. at 264, 693 S.E.2d at 715. Additionally,

> an accurate description of a subject's readily observable location and appearance is of course reliable in [a] limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*Hughes*, 353 N.C. at 209, 539 S.E.2d at 632 (quoting *Florida v. J.L.*, 529 U.S. 266, 272, 146 L. Ed. 2d 254, 261 (2000)). Based on this caselaw, we have found an anonymous tip was insufficient when the caller only "provided identifying information concerning a black male suspect wearing a white shirt in a blue Mitsubishi with a certain license plate number[]" who was selling drugs and guns at a precise location. *Johnson*, 204 N.C. App. at 264, 693 S.E.2d at 715-16.

¶ 11        The Order's Findings of Fact 3 and 4 described the anonymous call as follows:

> 3. . . . [T]he Winston-Salem Police Department . . . received a detailed anonymous report . . . from a caller who stated that a black male named Joseph Royster, who goes by "Gooney," had heroin and a gun in his vehicle, which the caller described as a black Chevrolet Impala with [a specified] license plate number [].
>
> 4. The caller described the black male as wearing a white T-shirt and blue jeans, with gold teeth and a gold necklace. The caller also reported that the heroin and the gun were located in the armrest of the black Chevrolet Impala, which was parked near the premises of South Fork Elementary School . . . .

¶ 12        The anonymous call here was "reliable in [a] limited sense" in providing details that identified Defendant and his car, which were confirmed by Sergeant Phillips. *Hughes*, 353 N.C. at 209, 539 S.E.2d at 632. "The record contains no information about who the caller was, no details about what the caller had seen, and no information even as to where the caller was located." *State v. Peele*, 196 N.C. App. 668, 673, 675 S.E.2d 682, 686, *disc. rev. denied*, 363 N.C. 587, 683 S.E.2d 383 (2009).

"[W]hile the tip at issue included identifying details of a person and car allegedly engaged in illegal activity, it offered few details of the alleged crime, no information regarding the informant's basis of knowledge, and scant information to predict the future behavior of the alleged perpetrator." *Johnson*, 204 N.C. App. at 263, 693 S.E.2d at 714-15. As a result, by merely providing identifying information, "there was nothing inherent in the tip itself to allow [the trial] court to deem it reliable and to provide the officers with the reasonable suspicion necessary to effectuate a stop." *Id*. at 264-65, 693 S.E.2d at 716. Even assuming all the identifying details of the anonymous call were corroborated, the call and corroboration alone did not provide the officers with reasonable articulable suspicion that criminal activity was afoot as no details regarding criminal activity were corroborated prior to Defendant's seizure. *See id*. at 264, 693 S.E.2d at 715 ("Where the detail contained in the tip merely concerns identifying characteristics, an officer's confirmation of these details will not legitimize the tip.").

¶ 13        The State argues the anonymous caller's use of a phone to make the tip bolsters the reliability of the anonymous tip. The State relies on *Navarette v. California*, where the United States Supreme Court found an anonymous caller's use of the 911 emergency system was "one of [several] relevant circumstances that, taken together, justified the officer's reliance on the information reported in the 911 call." *Navarette v. California*, 572 U.S. 393, 401, 188 L. Ed. 2d 680, 689 (2014). Although the United

States Supreme Court stated it was not suggesting "tips in 911 calls are *per se* reliable[,]" the Court held "[g]iven the foregoing technological and regulatory developments, . . . a reasonable officer could conclude that a false tipster would think twice before using such a system." *Id.* However, both parties here recognize it is unclear whether the anonymous caller contacted 911 or a non-emergency number, and there is no finding of fact by the trial court on this issue. Further, there is no evidence or finding of fact concerning whether the anonymous caller may have preserved her anonymity, such as by using a public phone. Finally, while there were other circumstances in *Navarette* suggesting reliability as to the criminal conduct, here there were not. *Id.* at 400-01, 188 L. Ed. 2d at 688. The reasoning from *Navarette* is inapplicable.

Additionally, the State argues the inclusion of Defendant's nickname in the anonymous tip may show the caller's familiarity with Defendant.[3] The State relies on caselaw regarding relevance that held a witness's testimony regarding a defendant's name that "[a]ll they call them (sic) was 'Spook[,]' [t]hat's all I knowed for a long time[]" was not inadmissible evidence of bad character, since the testimony "was relevant to show the witness's acquaintance and familiarity with the

---

[3] We note that while there was testimony that Defendant's nickname was in the PISTOL database, there was no evidence showing Sergeant Phillips, who stopped and seized Defendant, was aware of Defendant's nickname in the PISTOL database or otherwise. Additionally, the Order contains no findings of fact on this issue.

defendant." *State v. Barnett*, 41 N.C. App. 171, 173-74, 254 S.E.2d 199, 200-01 (1979). In the context of the opinion's full analysis, it is not clear that *Barnett* was holding that the use of a nickname, rather than the use of the nickname in the context of the specific witness's testimony, shows acquaintance and familiarity. *Id.* However, even assuming *Barnett* did hold this, it was in the context of the relevance of evidence. *Id.* It is well established that the rules regarding relevance are permissive and favor admission. *See, e.g., State v. Kowalski*, 270 N.C. App. 121, 127, 839 S.E.2d 443, 447 (2020) (emphases added) (citation and marks omitted) ("Relevant evidence is defined as evidence having *any tendency* to make the existence of *any fact* that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Relevant evidence, as a general matter, is considered to be admissible. *Any evidence calculated to throw light upon the crime charged should be admitted by the trial court*."). Our prior ruling in *Barnett* regarding the use of someone's nickname being at least minimally relevant is a far different context from the use of nicknames in an anonymous tip to provide reasonable articulable suspicion. *See Alabama v. White*, 496 U.S. 325, 329, 110 L. Ed. 2d 301, 308 (1990) ("[A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity . . . ."). We decline to blend the two.

¶ 15        Additionally, the State fails to show how the caller knowing Defendant's nickname suggests the caller had any more familiarity with Defendant than she did

by virtue of knowing his name, especially in the absence of any evidence indicating how common it was for Defendant to be referred to by his nickname. Even assuming, *arguendo*, that Sergeant Phillips had confirmed Defendant's nickname prior to seizing Defendant, there is no reason to conclude Defendant's nickname should be treated any differently than his name. Accordingly, we treat Defendant's nickname as additional identifying information, which does not make the anonymous call more "reliable in its assertion of illegality[.]" *Hughes*, 353 N.C. at 209, 539 S.E.2d at 632.

¶ 16 The anonymous call identifying Defendant and suggesting there was a firearm and heroin within his vehicle alone was insufficient to provide Sergeant Phillips with reasonable articulable suspicion.

**2. Totality of the Circumstances**

¶ 17 However, "[a] court must consider the totality of the circumstances—the whole picture in determining whether a reasonable suspicion to make an investigatory stop exists." *Watkins*, 337 N.C. at 441, 446 S.E.2d at 70 (marks omitted). Here, when considering the totality of the circumstances prior to Defendant's stop, law enforcement had reasonable articulable suspicion that criminal activity was afoot.

¶ 18 In *State v. Malachi*, we held an anonymous tip alone was insufficient to supply law enforcement with reasonable articulable suspicion, but ultimately found reasonable articulable suspicion after looking at the totality of the circumstances. *State v. Malachi*, 264 N.C. App. 233, 237-39, 825 S.E.2d 666, 669-71, *appeal*

*dismissed*, 372 N.C. 702, 830 S.E.2d 830 (2019). We based our conclusion regarding the existence of reasonable articulable suspicion, in part, on the defendant making eye contact with the uniformed police officer, then turning and "blading," and moving away from the officers as they approached. *Id.* at 239, 825 S.E.2d at 671. As in *Malachi,* here there was reasonable articulable suspicion based on the totality of the circumstances.

¶ 19    Similar to the facts of *Malachi*, Sergeant Phillips' testimony and the trial court's findings of fact describe the following chain of events: before Defendant noticed Sergeant Phillips, Defendant got into the car; as Sergeant Phillips approached, but was not yet seen, Defendant exited the vehicle; Sergeant Phillips addressed Defendant by name and, upon seeing Sergeant Phillips, Defendant reached back into the car, turned it off, and locked it;[4] and Defendant then began walking away from Sergeant Phillips and reached for his waistband. Considering prior holdings regarding a defendant's evasive behavior being a factor supporting reasonable articulable suspicion, we conclude this evidence supports finding reasonable articulable suspicion existed for the stop. *See, e.g., State v. Butler*, 331

---

[4] Although the Order does not indicate that Defendant locked the door, the evidence at trial unequivocally does. *See State v. Johnson*, 2021-NCSC-85, ¶ 12 (marks omitted) ("[W]hen there is no conflict in the evidence, an appellate court may infer a trial court's findings in support of its decision on a motion to suppress so long as that unconflicted evidence was within the trial court's contemplation.").

N.C. 227, 233, 415 S.E.2d 719, 722 (1992) (finding reasonable articulable suspicion existed in part based on evidence that "upon making eye contact with the uniformed officers, [the] defendant immediately moved away, behavior that is evidence of flight"); *Malachi*, 264 N.C. App. at 237-39, 825 S.E.2d at 669-71; *State v. Garcia*, 197 N.C. App. 522, 529, 677 S.E.2d 555, 559 (2009) ("Factors to determine whether reasonable suspicion existed include . . . unprovoked flight."); *State v. Willis*, 125 N.C. App. 537, 542, 481 S.E.2d 407, 411 (1997) ("[W]hen an individual's presence at a suspected drug area is *coupled* with evasive actions, police may form, from those actions, the quantum of reasonable suspicion necessary to conduct an investigatory stop.").

¶ 20      Defendant cites *State v. Fleming* to support his argument that we cannot rely upon his reaction to the police to support a finding of reasonable articulable suspicion. *See State v. Fleming*, 106 N.C. App. 165, 415 S.E.2d 782 (1992). *Fleming* involved two men standing between two apartment buildings. *Id.* at 170, 415 S.E.2d at 785. The two men saw the officers but initially remained in the area talking, and an officer subsequently noticed the men walking out of the open area toward the street and down a public sidewalk, where they were stopped. *Id.* at 170-71, 415 S.E.2d at 785. We found no reasonable articulable suspicion existed as there was only "a generalized suspicion that the defendant was engaged in criminal activity, based upon the time, place, and the officer's knowledge that [the] defendant was unfamiliar to the area."

*Id*. at 171, 415 S.E.2d at 785.

Additionally, Defendant cites *In re J.L.B.M.* to support his contention that "an individual's walking away from officers has been held not to give rise to reasonable suspicion absent other evidence that he was engaged in a crime." *See In re J.L.B.M.*, 176 N.C. App. 613, 627 S.E.2d 239 (2006). *In re J.L.B.M.* involved the stop and frisk of a juvenile after a police dispatch regarding a "suspicious person." *Id*. at 616, 627 S.E.2d at 241. We described the additional facts as follows:

> [The police officer] saw a person in the gas station parking lot, later identified as the juvenile, who fit the description of the person. When the juvenile saw [the police officer], he walked over to a vehicle in the parking lot, spoke to someone, and then began walking away from [the police officer's] patrol car. [The police officer] pulled up beside the juvenile in an adjoining restaurant parking lot and stopped the juvenile.

*Id*. We noted the police dispatch merely stated the juvenile was a "suspicious person" but there was no allegation that he was engaged in any criminal activity. *Id*. at 620, 627 S.E.2d at 244. "There was no approximate age, height, weight or other physical characteristics given as part of the description, nor was there a description of any specific clothing worn by the suspicious person." *Id*. We found the officer only had a "generalized suspicion" and the stop was unjustified since

> [the police officer] relied solely on the dispatch that there was a suspicious person at the Exxon gas station, that the juvenile matched the "Hispanic male" description of the suspicious person, that the juvenile was wearing baggy

> clothes, and that the juvenile chose to walk away from the patrol car. [The police officer] was not aware of any graffiti or property damage before he stopped the juvenile, and he testified that he noticed the bulge in the juvenile's pocket after he stopped the juvenile.

*Id.* at 622, 627 S.E.2d at 245.

At the outset, we note that the circumstances in the cases relied upon by Defendant are distinct from the circumstances here in that law enforcement officers had received a specified allegation of criminal activity that informed their interactions with Defendant. In addition to the anonymous caller's allegation that Defendant was in possession of controlled substances, there was also an allegation that he was in possession of a firearm. In conjunction with Defendant's presence on school property and his prior charge of felon in possession of a firearm, if law enforcement officers had reasonable articulable suspicion that Defendant was in possession of a firearm, then they had reasonable articulable suspicion he was violating statutes prohibiting the possession of a firearm on school property and the possession of a firearm by a felon. *See* N.C.G.S. § 14-269.2(b) (2019) ("It shall be a Class I felony for any person knowingly to possess or carry, whether openly or concealed, any gun, rifle, pistol, or other firearm of any kind on educational property or to a curricular or extracurricular activity sponsored by a school."); N.C.G.S. § 14-415.1(a) (2019) ("It shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm . . . .

Every person violating the provisions of this section shall be punished as a Class G felon.").

¶ 23    Additionally, in terms of evasive action, Defendant's actions here show a stronger indication of an altered course of action than the actions of the defendants in *Fleming* and the juvenile in *In re J.L.B.M.* since Defendant's actions here were an immediate reaction to seeing Sergeant Phillips. Rather than simply walking away from Sergeant Phillips, like the defendants in *Fleming* and the juvenile in *In re J.L.B.M.*, Defendant changed his immediate course of action in response to Sergeant Phillips' presence by turning off the car Defendant had just started, closing and locking the car door, and walking away from the car and Sergeant Phillips. We have held similar behavior to be evasive action. *See Malachi*, 264 N.C. App. at 239, 825 S.E.2d at 671 (emphasis added) ("Given [the] [d]efendant's 'blading' after making eye contact with [the arresting officer] in his marked car and uniform, *[the] [d]efendant's movements away from [the arresting officer] as he was being approached*, [the arresting officer's] training in identifying armed suspects, and [the] [d]efendant's failure to comply with [N.C.G.S. §] 14-415.11(a) when approached by the officers, we hold that the officers had reasonable suspicion under the totality of the circumstances to conduct an investigatory stop of [the] [d]efendant in response to the tip identifying him as possessing a firearm at the gas station.").

¶ 24    Further, Defendant's PISTOL database records showed that he had prior drug

charges and a prior firearm charge. *Johnson*, a recent case decided by our Supreme

Court, is instructive to the import of this evidence. *See generally Johnson,* 2021-

NCSC-85. In *Johnson,*

> the unconflicted evidence introduced by the State at the
> hearing conducted by the trial court on [the] defendant's
> motion to suppress—that (1) the traffic stop occurred late
> at night (2) in a high-crime area, with (3) [the] defendant
> appearing "very nervous" to the detaining officer to the
> point that it "seemed like his heart was beating out of his
> chest a little bit," with (4) [the] defendant "blading his
> body" as he accessed the Dodge Charger's center console,
> and *(5) [the] defendant's criminal record indicating a "trend
> in violent crime" and weapons-related charges*—was
> sufficient for the trial court to make findings of fact and
> conclusions of law that the investigating law enforcement
> officer had reasonable suspicion to conduct a *Terry* search
> of [the] defendant's person and in areas of [the] defendant's
> vehicle under [the] defendant's immediate control for the
> officer's safety.

*Id.* at ¶ 15 (emphasis added). Our Supreme Court relied on the officer's knowledge

of the defendant's charges based on CJLEADS[5] database records, in part, to conclude

the totality of circumstances created a reasonable articulable suspicion that the

defendant was potentially armed and dangerous, justifying the *Terry* search. *Id.* at

---

[5] We note that the CJLEADS database is "a database which details a person's history of contacts with law enforcement in the form of a list of criminal charges filed against the individual[.]" *Id.* at ¶ 4. Here, at the motion to suppress hearing, testimony described the PISTOL database as searchable police database that provides a person's information, comprised of, in part, their fifteen most recent contacts with law enforcement, including charges. For the purposes of this appeal, there is no relevant distinction between the use of the CJLEADS database in *Johnson* and the use of the PISTOL database here.

¶¶ 4, 15, 18.

¶ 25      Here, like in *Johnson*, Sergeant Phillips searched Defendant through the PISTOL database and discovered that Defendant had a history of drug charges and a firearm charge.    Based on *Johnson*, Defendant's prior firearm charge is appropriately part of the inquiry into whether reasonable articulable suspicion existed to stop Defendant.  *Id.*; *see also Garcia*, 197 N.C. App. at 530-31, 677 S.E.2d at 560 (relying in part on PISTOL database records to find reasonable articulable suspicion).   Here, Defendant's PISTOL database records support the trial court's conclusion that reasonable articulable suspicion existed at the time of the stop.

¶ 26      Additionally, Defendant reached for his waistband while he was walking away from Sergeant Phillips.  Finding of Fact 18 states:

> The black male then began walking away as Sgt. Phillips walked toward him.  With his back to Sgt. Phillips, the black male reached for his waistband.

We have found similar movements to be relevant in finding reasonable articulable suspicion existed.  *See State v. Sutton*, 232 N.C. App. 667, 682, 754 S.E.2d 464, 473 (considering, in part, that the defendant grabbed his waistband to clinch an item, which was interpreted as an attempt to conceal something, in concluding reasonable articulable suspicion existed), *disc. rev. denied*, 367 N.C. 507, 759 S.E.2d 91 (2014); *State v. Hamilton*, 125 N.C. App. 396, 401, 481 S.E.2d 98, 101 (finding a pat-down for weapons was justified because the defendant's "hand began to reach toward his left

side[,]" which caused the officer to believe the defendant was reaching for a weapon), *disc. rev. denied and appeal dismissed*, 345 N.C. 757, 485 S.E.2d 302 (1997).

¶ 27         Finally, while the anonymous call did not provide reasonable articulable suspicion on its own, or as corroborated, it can be appropriately considered within the totality of the circumstances. *See Malachi*, 264 N.C. App. at 239, 825 S.E.2d at 671 (emphasis added) ("Given [the] [d]efendant's 'blading' after making eye contact with [the arresting officer] in his marked car and uniform, [the] [d]efendant's movements away from [the arresting officer] as he was being approached, [the arresting officer's] training in identifying armed suspects, and [the] [d]efendant's failure to comply with [N.C.G.S. §] 14-415.11(a) when approached by the officers, we hold that the officers had reasonable suspicion under the totality of the circumstances to conduct an investigatory stop of [the] [d]efendant *in response to the tip identifying him as possessing a firearm at the gas station*."). Defendant contends the anonymous tip did not support Defendant having access to a firearm because the firearm was allegedly located in the armrest of the car and there was no testimony that Sergeant Phillips observed any movements consistent with retrieving the firearm. However, there is also evidence that Sergeant Phillips was forty to fifty yards away from the vehicle when Defendant first approached the vehicle, a distance where movements inside the vehicle could have gone unseen, and Defendant could have retrieved the alleged firearm between the time of the tip and when the law enforcement officers arrived.

Although the anonymous tip was not corroborated as to the location of the firearm, it alleged that Defendant had access to a firearm in his car, which he had exited immediately prior to when he was stopped. In light of our caselaw and under these facts, it is appropriate to consider the impact of the anonymous call within the totality of circumstances to determine if law enforcement had a reasonable articulable suspicion that criminal activity was afoot. *See id.*

¶ 28        Altogether, Defendant's attempt to avoid Sergeant Phillips, Defendant's PISTOL database records reflecting a prior firearm charge, Defendant's action of reaching toward his waistband, and the anonymous call suggesting that Defendant potentially had access to a firearm created a reasonable articulable suspicion that Defendant was carrying a firearm. These objective circumstances, in conjunction with unchallenged Finding of Fact 2, which states Defendant was found and arrested "on school property," provided Sergeant Phillips with reasonable articulable suspicion that Defendant was unlawfully in possession of a firearm on school property. *See* N.C.G.S. § 14-269.2(b) (2019) ("It shall be a Class I felony for any person knowingly to possess or carry, whether openly or concealed, any gun, rifle, pistol, or other firearm of any kind on educational property or to a curricular or extracurricular activity sponsored by a school.").

¶ 29        Based on the unchallenged findings of fact, the trial court's conclusion of law that Sergeant Phillips had a reasonable articulable suspicion for the stop was proper,

as there was reasonable articulable suspicion that Defendant unlawfully possessed a firearm on school property.[6]

## CONCLUSION

The trial court did not err in concluding the initial investigatory seizure of Defendant was supported by reasonable articulable suspicion based on Defendant's previous criminal charges, an anonymous call suggesting Defendant was armed, Defendant's reaction to Sergeant Phillips' presence, and Defendant reaching for his

---

[6] Defendant does not challenge whether there was a proper basis for law enforcement officers to search his vehicle after they stopped him outside his vehicle and a frisk of Defendant revealed nothing improper on his person; Defendant has only challenged the constitutionality of the initial stop on appeal and did not challenge any other issue on appeal. *See* N.C. R. App. P. 28(a) (2021) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned."); *see also State v. Miller*, 228 N.C. App. 496, 499 n.1, 746 S.E.2d 421, 424 n.1 (2013) ("The trial court also denied [the] defendant's motion to suppress with regard to the gun in his car and the marijuana found on the back steps. Specifically, the trial court concluded that [the] defendant was not in custody when he voluntarily told the officer about the gun in his vehicle. Moreover, the trial court held that the marijuana on the back steps was in plain view. On appeal, [the] defendant does not challenge the denial of his motion to suppress with regard to these two pieces of evidence. Thus, these issues are deemed abandoned on appeal, N.C. R. App. P. 28(b)(6) (2012), and we will not determine whether the trial court erred in denying [the] defendant's motion to suppress with regard to them."), *rev'd on other grounds*, 367 N.C. 702, 766 S.E.2d 289 (2014).

Additionally, although Defendant's motion to suppress contended there was no probable cause to search his vehicle, Defendant expressly waived any additional basis to challenge the search of his vehicle at the motion to suppress hearing when Defense Counsel stated "on the motion, we were limiting it to the seizure, the stop of [] [D]efendant . . . ." This renders any other issue, including probable cause for the search of Defendant's vehicle, unpreserved on appeal. *See* N.C. R. App. P. 10(a)(1) (2021) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion.").

waistband, in conjunction with Defendant's presence on school property. While none of these circumstances alone would satisfy constitutional requirements, when considered in their totality, these circumstances provided Sergeant Phillips with reasonable articulable suspicion to make a lawful stop. The trial court properly denied Defendant's motion to suppress.

NO ERROR.

Chief Judge STROUD and Judge COLLINS concur.