IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-64

Filed 15 October 2024

Forsyth County, No. 20 CRS 057505

STATE OF NORTH CAROLINA

       v.

TERREL DAWAYNE ROWDY

Appeal by Defendant from judgment entered 7 June 2023 by Judge Eric C. Morgan in Forsyth County Superior Court. Heard in the Court of Appeals 28 August 2024.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Alan D. McInnes, for the State.*
>
> *Stephen D. Fuller for the Defendant.*

WOOD, Judge.

Terrel Dawayne Rowdy ("Defendant") appeals from a jury conviction finding him guilty of carrying a concealed weapon in violation of N.C. Gen. Stat. § 14-269(A1). On appeal, Defendant argues the trial court erred when it denied his motion to suppress evidence of the firearm seized pursuant to a vehicular search. Defendant contends that the events following the law enforcement officer's investigatory stop due to a traffic violation were unlawful. Specifically, Defendant argues the officers lacked sufficient grounds to conduct a *Terry* frisk and lacked probable cause to search

his vehicle. For the reasons stated below, we affirm the trial court's order denying Defendant's motion to suppress and hold Defendant received a trial free from error.

## I. Factual and Procedural Background

On 26 July 2020, Forsyth County Sheriff Deputy Brandon Baugus was patrolling the area of Rural Hall. At approximately 3:45 p.m., Deputy Baugus was stationed at a parking lot observing the traffic on a nearby intersection. At this time, he observed the following: two vehicles approached the intersection and entered the left-hand turning lane; the vehicles were in the same lane of travel, with the front vehicle waiting to make the turn; the car in the rear, a Blue Ford Mustang, moved into the oncoming lane of traffic, accelerated past the other vehicle, and made a left turn. Recognizing this traffic violation, Deputy Baugus activated his blue lights and sirens and pursued the Mustang to conduct a traffic stop.

Despite Deputy Baugus' lights and sirens, the operator of the Mustang continued to drive and did not immediately heed to the officer's show of authority. The vehicle then entered the parking lot of the West Wall Street Apartments. Deputy Baugus again activated his siren several times in the parking lot to get the vehicle to stop, but the Mustang drove further into the parking lot. Eventually, the Mustang went in reverse, as if it was backing into a parking space, and stopped; Deputy Baugus parked his vehicle at the rear of the Mustang.

Deputy Baugus approached the Mustang and initiated conversation with the driver, Defendant, through the open passenger side window. Deputy Baugus

informed Defendant that he was pulled over for a traffic violation and Defendant promptly provided his license and registration. During this short interaction, Deputy Baugus smelled an odor of marijuana emitting from Defendant's vehicle. Deputy Baugus then returned to his patrol vehicle to verify Defendant's information and check for outstanding warrants. He learned Defendant had a prior record of narcotics offenses and a prior conviction for carrying a concealed gun. As Deputy Baugus reviewed the information, Deputy M.D. Mitchell was nearby and arrived to assist him at the traffic stop.

Deputy Baugus briefed Deputy Mitchell on the situation, asked him to obtain a current address from Defendant, and informed him that he detected an odor of marijuana in Defendant's vehicle. Upon Deputy Mitchell's return, he confirmed the odor. The officers went back to Defendant's vehicle and asked him to step out of the vehicle. Deputy Baugus asked Defendant why the odor was coming from his vehicle, if he had been smoking, and if he had been around someone who had smoked marijuana. Defendant responded "no" to each of the questions. As Deputy Baugus continued his questioning regarding the odor, Defendant stopped answering his questions and began speaking on his cell phone. Deputy Baugus told him he could not answer questions and speak on his phone at the same time, to which Defendant responded by "blading" his body away from Deputy Baugus at a 45-degree angle toward the vehicle. According to Deputy Baugus "blading" is "a detection device of someone who is getting confrontational or who is attempting to avoid conversation

with you."

After Defendant disengaged from the conversation, the officers detained him but told him he was not under arrest. For the officer's safety, Deputy Mitchell frisked Defendant to ensure he did not have any weapons on him. According to Deputy Baugus it is "common practice" to frisk anyone that was detained. As a result of the frisk, Deputy Mitchell felt a "cylindrical object" in Defendant's left front pants pocket, which he discovered was a "blunt." Due to the odor and the officers' training and experience, they suspected it was a marijuana blunt. Deputy Baugus then performed a search of Defendant's vehicle and found the gun at issue in this case.

On 30 November 2020, a grand jury indicted Defendant for carrying a concealed weapon, pursuant to N.C. Gen. Stat. § 14-269(A1) and § 14-269(C), and possession of a stolen firearm. Defendant filed a motion to suppress on 28 April 2023. Defendant argues that the basis for the search, seizure, and arrest arose from the officer's opinion that the odor of marijuana was coming from Defendant's vehicle. However, Defendant contends, there is no factual way to differentiate between legal hemp and illegal marijuana, so the basis of odor alone is insufficient to identify the substance. Defendant asserts that because of the similarities between hemp and marijuana in both odor and appearance, the officers lacked probable cause to search him and the vehicle. Defendant further contends that without confirmation that odor emanated from an illegal substance, the officers acted under the presumption that it was marijuana resulting in an unlawful search. Defendant argues because the

officers lacked probable cause, the search that led to the seizure of the gun was also unlawful. In Defendant's motion, he asked the trial court to suppress all evidence obtained as a result of the illegal search, seizure, and detention of Defendant.

On 5 June 2023, the trial court held an evidentiary hearing on Defendant's motion to suppress. By written order, the court denied Defendant's motion to suppress. The court found as follows: Deputy Baugus lawfully stopped Defendant after he observed a traffic violation; Defendant did not immediately pull over and drove to the West Wall Apartment complex; Deputy Baugus knew the area was a high crime area; Deputy Baugus detected an odor of marijuana in Defendant's vehicle; Deputy Baugus was informed Defendant had prior offenses for narcotics and carrying a concealed gun; Mitchell also observed a "strong" odor of marijuana; and Defendant stopped answering questions and turned his body away from the officers. The trial court concluded that the officer's decision to frisk Defendant was based on specific and articulable facts. Moreover, following the frisk and discovery of the "blunt," there was probable cause to search the vehicle. Because the search of Defendant and his vehicle was lawful, the trial court denied Defendant's motion to suppress.

On 7 June 2023, a jury found Defendant guilty of carrying a concealed weapon but not guilty of possession of a stolen firearm. He was sentenced to a term of eight to nineteen months of imprisonment, suspended for thirty months of supervised probation. Defendant gave oral notice of appeal at trial.

## II. Analysis

On appeal, Defendant argues the trial court erred by denying his motion to suppress, specifically challenging certain findings of fact and conclusions of law regarding: (1) the officer's detection of marijuana based on odor; (2) the *Terry* frisk; and (3) the establishment of probable cause to search Defendant's vehicle. Defendant further argues that, due to these errors, the trial court plainly erred by denying his motion to suppress and by admitting the gun into evidence.

## A. Motion to Suppress

The scope of review of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted). "We accord great deference to a trial court's findings of fact, as it is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and then based upon those findings, render a legal decision." *State v. Knudsen*, 229 N.C. App. 271, 275, 747 S.E.2d 641, 645 (2013) (cleaned up). When "the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citation omitted). "Conclusions of law, however, are reviewed *de novo*" meaning, "the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Faulk*, 256 N.C. App. 255, 262, 807

S.E.2d 623, 629 (2017) (cleaned up).

### 1. Challenged Findings of Fact

Defendant first argues the following findings of fact are not supported by competent evidence:

> 9. As he received the license and registration from Defendant, Deputy Baugus was only at the window of the Blue Mustang for a very short time, *and he observed a faint odor of marijuana* coming from the interior of the Blue Mustang.
>
> 16. Deputy Mitchell approached the Defendant, and asked him to roll the window down. While he was speaking to the Defendant, Deputy Mitchell *observed a strong odor of marijuana* coming from the Blue Mustang.
>
> 22. Defendant was frisked by Deputy Mitchell, and, during that frisk, Deputy Mitchell *pulled a "blunt" out of the Defendant's left front pants pocket*, and placed it on the spoiler of the Blue Mustang. When Deputy Mitchell pulled the "blunt" out, *he informed the Defendant that it was "marijuana"*. The Defendant did not, at any point, claim that he possessed industrial hemp.
>
> 23. The blunt removed from Defendant's pocket *appeared to be,* in the training and experience of both Deputy Baugus and Deputy Mitchell, *a marijuana "blunt."*

Each of the challenged findings relate to the odor of marijuana and the contents of the "blunt." Defendant argues there is insufficient evidence to support these findings and directs us to: (1) an SBI Memo explaining the difficulties in differentiating between legal hemp versus illegal marijuana due to the similarities in odor and appearance, and (2) the officer's testimony at the hearing that they could not identify

that the odor or "blunt" was marijuana as opposed to legal hemp. Thus, Defendant argues there is no evidence that the substance the officers smelled and recovered was illegal marijuana, rather than legal hemp. Defendant's argument is misplaced because the legalization of hemp does not eliminate the significance of the officer's detection of an odor of marijuana for the purposes of determining probable cause.

Here, the trial court found that Deputy Baugus received training on marijuana and on the identities, textures, and odor of marijuana; Mitchell received training to identify drugs, including weekly training with K-9's as to the detection of narcotics; Mitchell has identified marijuana hundreds of times in his years on patrol; and Mitchell investigated cases involving marijuana "blunts" hundreds of times. Accordingly, both officers were trained and had experience in identifying marijuana by sight and smell.

This Court analyzed similar challenged findings in *State v. Dobson*, ___ N.C. App. ___, 900 S.E.2d 231 (2024). In that case, the defendant argued "in light of the advent of legal hemp, it is now impossible for any law enforcement officer—whether human or canine—to identify 'the odor of marijuana' with only her nose." *Id.* at ___, 900 S.E.2d at 234. Like the present case, the defendant contended that the odor *may* be marijuana, but it also could be legal hemp. The Court in *Dobson* overruled the defendant's argument and concluded:

> [C]ontrary to Defendant's arguments, the legalization of industrial hemp did not eliminate the significance of detecting "the odor of marijuana" for the purposes of a

motion to suppress. The legalization of industrial hemp "has not changed the State's burden of proof to overcome a motion to suppress." *Teague*, 286 N.C. App. at 179 n.6, 879 S.E.2d at 896 n.6.

Indeed, to the extent that Defendant challenges these portions of the trial court's findings of fact because of their potential to suggest, by implication, that the officers *actually smelled marijuana*, any such concern is irrelevant to the dispositive issue. Ultimately, the significance of these findings is that the officers *smelled the odor of marijuana*, an odor that we have previously concluded continues to implicate the probable cause determination despite the legalization of industrial hemp.

*Id.* at ___, 900 S.E.2d at 234.

Similarly, in *Little*, the defendant relied on the SBI memo and argued "the trial court should have made a finding of fact that hemp and marijuana are indistinguishable by smell or appearance and that this fact requires a conclusion that the officers did not have probable cause to conduct the search." *State v. Little*, No. COA23-410, 2024 WL 4019033, at *3 (N.C. Ct. App. Sept. 3, 2024). There, the trial court made findings that three law enforcement officers smelled and observed what they believed to be marijuana, and the defendant did not claim it was hemp. *Id.* at *7. The Court in *Little* stated, "[e]ven if industrial hemp and marijuana look and smell the same, the change in the legal status of industrial hemp does not substantially change the law on the plain view or plain smell doctrine as to marijuana." *Id.* at *9. This Court ultimately held that the trial court's findings supported its conclusion that there was probable cause to search the defendant's

vehicle, because the officer had a reasonable belief that the substance he smelled, and saw was marijuana. *Id.* at *9.

Here, too, Defendant argues there was insufficient evidence that the recovered substance was marijuana based on the smell and appearance. As in *Little*, there was evidence presented to the trial court that, based on the officers' training and experience, the officers smelled and observed marijuana, and Defendant did not claim he possessed legal hemp. Moreover, the officers had a reasonable belief that the substance was marijuana. The trial courts findings of fact "adequately addressed this evidence" and were supported. *Little,* 2024 WL 4019033, at *7. Thus, in view of *Little*, we hold that Defendant's challenged findings of fact are supported by competent evidence.

We further note, Defendant's arguments are grounded in policy, identifying the future challenges of distinguishing between the two substances. However, the duty of this Court when reviewing challenged findings of fact is to determine whether those facts are supported by competent evidence, considering the evidence presented to the trial court. *Cooke*, 306 N.C. at 134, 291 S.E.2d at 619. The role of this Court is to make decisions based on the law not on policy. When viewing the record and evidence presented at the hearing, the trial court heard testimony from the officers that they detected an odor of marijuana; that both officers had experience and training in identifying marijuana; that Defendant did not at any time claim to the officers that he possessed or used legal hemp; and when Deputy Baugus asked

Defendant about the odor, if he had any marijuana, and if he had been smoking marijuana, Defendant responded, "No." Defendant's policy arguments do not call into question the competency of this evidence. *See Little,* 2024 WL 4019033, at *4 (noting the trial court correctly refused to take judicial notice of the SBI memo and that this Court has not previously "accorded the [SBI] [m]emo the status of binding law." (citations omitted)). Thus, Defendant's arguments, even if reasonable, do not alter the scope of our review and we hold the challenged findings are supported by competent evidence.

### 2. *Terry* **Frisk**

Defendant next argues that the trial court erred when it concluded the frisk of Defendant was lawful, as the officers lacked reasonable suspicion that he was armed and dangerous. Defendant does not challenge the lawfulness of the traffic stop or the duration of the stop, thus those issues are deemed abandoned on appeal. N.C. R. App. P. 28(a). Our review is therefore limited to whether the trial court's findings support its conclusions of law, under a *de novo* standard, that the frisk of Defendant was lawful.

"During a lawful stop, 'an officer may conduct a pat down search, for the purpose of determining whether the person is carrying a weapon, when the officer is justified in believing that the individual is armed and presently dangerous.' " *State v. Johnson,* 246 N.C. App. 677, 692, 783 S.E.2d 753, 764 (2016) (citation omitted). The purpose of a *Terry* frisk is for the "protection of the police officer" and it is "justified

- 11 -

by the legitimate and weighty interest in officer safety." *Id.* (cleaned up). This Court has stated, in many circumstances, "once the defendant is outside the automobile, an officer is permitted to conduct a limited pat down search for weapons if he has a reasonable suspicion based on articulable facts under the circumstances that defendant may be armed and dangerous." *State v. Briggs,* 140 N.C. App. 484, 488, 536 S.E.2d 858, 860 (2000) (citation omitted). However, the search is limited to "the person's outer clothing and to [a] search for weapons that may be used against the officer." *State v. Shearin,* 170 N.C. App. 222, 226, 612 S.E.2d 371, 375–76 (2005) (citation omitted). It is well-established that the key inquiry is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *State v. King,* 206 N.C. App. 585, 589, 696 S.E.2d 913, 915 (2010) (cleaned up). Moreover, "the officer need not be absolutely certain that the individual is armed" and is "entitled to formulate common-sense conclusions . . . in reasoning that an individual may be armed." *Id.* (cleaned up).

Here, the trial court concluded that the frisk was lawful because Defendant failed to immediately pull over and instead pulled into the West Wall Apartments which in the officer's experience, was known to be a high crime area; Deputy Baugus was aware that Defendant had prior convictions for narcotics and carrying a concealed gun; Defendant stopped answering questions and bladed, or turned, his body away from the officers, while remaining on his cell phone; and the officers smelled an odor of marijuana from Defendant's car. Defendant argues that his

"blading" may not be considered under this analysis because it was merely an attempt to disengage from the officer's incriminating questioning. Defendant also argues the trial court's finding that he pulled into a high crime area is irrelevant because the record suggests no connection between Defendant and the criminal activity at the West Wall Apartments. To the contrary, Defendant suggests it was merely a location that he pulled into as a result of the traffic stop. We are unpersuaded.

In *State v. Scott*, this Court recognized that "each of these factors, standing alone, might not be sufficient to justify a weapons frisk." *State v. Scott*, 287 N.C. App. 600, 605-06, 883 S.E.2d 505, 510-11 (2023) (citations omitted). However, this Court is instructed to "examine the totality of the circumstances surrounding [the officer's] interaction with [D]efendant in order to achieve a comprehensive analysis as to whether the officer's conclusion that [D]efendant may have been armed and dangerous was reasonable." *Id.* at 606, 883 S.E.2d at 511 (citation omitted). Thus, we consider each of the trial court's findings to determine whether there was a reasonable suspicion that Defendant was armed and dangerous under the totality of the circumstances.

First, our Supreme Court has noted the potential dangers of associating an individual's location with an assumption of criminal activity. It instructed that such an association, in isolation, is not sufficient to "establish the existence of reasonable suspicion." *State v. Jackson*, 368 N.C. 75, 80, 772 S.E.2d 847, 850 (2015). However, it also stated in that case "[the] defendant was walking in, and the stop occurred in,

a 'high crime area' which is among the relevant contextual considerations in a *Terry* analysis." *Id.* (cleaned up). In the case *sub judice*, Defendant pulled into the West Wall Apartments, which both officers knew, from training and experience, was a high crime area. We acknowledge that Defendant's decision to pull over into this complex, by itself, does not establish a connection between his presence and criminal activity. Notwithstanding, the trial court found the following unchallenged findings of fact: Defendant did not immediately stop in response to the blue lights and sirens but proceeded into the parking lot of the apartments; Defendant again did not immediately stop when Deputy Baugus activated his siren several more times, and Defendant put his car into reverse as if to back into a parking space. *See State v. Jordan*, 120 N.C. App. 364, 367, 462 S.E.2d 234, 237 (1995) (considering the defendant's failure to immediately pull over in response to the officer's lights in reasonable suspicion analysis.).

As to Defendant's convictions, our Supreme Court recognized, "[s]tanding alone, defendant's criminal record for which defendant has already paid his debt to society does not constitute reasonable suspicion." State v. Johnson, 378 N.C. 236, 245, 861 S.E.2d 474, 484 (2021). In the same regard, it acknowledged that it could be considered under the totality of the circumstances test, by holding the court could consider that the defendant "possessed a criminal history which depicted a trend in violent crime." *Id.* 378 N.C. at 246, 861 S.E.2d at 484 (cleaned up). Here, Defendant had prior convictions for narcotics and carrying a concealed gun. Additionally, when

Deputy Baugus learned of Defendant's criminal record, he received information from communications to "approach [Defendant] with caution." *See Scott*, 287 N.C. App. at 606, 883 S.E.2d at 511 (This Court considered that the officer received "caution data revealing [the defendant's] prior charge of murder and gang involvement" when analyzing the reasonableness of the weapons frisk.). In addition to Defendant's convictions, Deputy Baugus was aware that the West Wall Apartments was an area with many police calls, high crime, and numerous reports of narcotics.

Next, Deputy Baugus testified "[blading] is a detection device of someone who is getting confrontational or who is attempting to avoid conversation with you." Further, "[Defendant] had stopped answering all questions and informed [the officers] that he was on the phone and then turned away from us." In *State v. Malachi*, this Court included "blading" when analyzing whether the officer had a reasonable suspicion under the totality of the circumstances. *State v. Malachi*, 264 N.C. App. 233, 239, 825 S.E.2d 666, 671 (2019). There, this Court considered that the defendant "turned his body in such a way as to prevent the officer from observing a weapon." *Id.* at 237, 825 S.E.2d at 670. Here too, Defendant turned his body away from the officer's and stopped answering their questions. Although Defendant was not required to answer the officers' questions, his posture of turning away from the officers, "blading," is relevant to our consideration of the fact before us. Moreover, "an officer's experience and training can create reasonable suspicion. Defendant's actions must be viewed through the officer's eyes." *State v. Watson*, 119 N.C. App.

395, 398, 458 S.E.2d 519, 522 (1995) (citations omitted).

Looking at the totality of the circumstances, we conclude that the factors identified by the trial court are sufficient for an officer to believe that Defendant was armed and dangerous. Defendant failed to immediately pull over after Deputy Baugus turned on his lights and siren; subsequently pulled into an area that the officer knew was a high crime location; Deputy Baugus was notified of Defendant's prior convictions and was to "proceed with caution;" and Defendant turned his body away from the officers, which Deputy Baugus testified is a sign that an individual "may become confrontational." While "reasonable suspicion demands more than a mere 'hunch' on the part of the officer," it "requires only some minimal level of objective justification." *Scott*, 287 N.C. App. at 605, 883 S.E.2d at 510 (cleaned up). When viewing the evidence and the interaction between the officers and Defendant, under the totality of the circumstances, we hold the officers had "objective justification" when Deputy Mitchell frisked Defendant. Thus, the trial court did not err when it concluded that the frisk was reasonable and lawful.

### 3. **Probable Cause**

Defendant next contends that the officers lacked probable cause to search his vehicle despite finding a "blunt" in his pocket. Defendant makes similar assertions as above, arguing that the officers could not have probable cause to seize the blunt since the item could have been legal hemp. Likewise, it could not be "immediately apparent" that the object was marijuana when there is no practicable way to tell the

substance is marijuana as opposed to legal hemp. Defendant urges this Court to hold that without the discovery of the blunt, the officers did not have probable cause to search his vehicle, thus the evidence concerning the recovery of the gun should have been suppressed. We do not deem it necessary to consider Defendant's arguments concerning the blunt, as the search of Defendant's vehicle was lawful and supported by probable cause without the discovery of the blunt. The odor of marijuana emanating from the vehicle provided probable cause.

"A police officer in the exercise of his duties may search an automobile without a search warrant when the existing facts and circumstances are sufficient to support a reasonable belief that the automobile carries contraband materials." *State v. Degraphenreed*, 261 N.C. App. 235, 241, 820 S.E.2d 331, 336 (2018) (citation omitted). "An officer has probable cause to believe that contraband is concealed within a vehicle when given all the circumstances known to him, he believes there is a 'fair probability that contraband or evidence of a crime will be found' therein." *State v. Ford*, 70 N.C. App. 244, 247, 318 S.E.2d 914, 916 (1984) (citation omitted). Importantly, "[t]his Court and our Supreme Court have repeatedly held that the *odor of marijuana alone* provides probable cause to search the object or area that is the source of that odor." *State v. Springs*, 292 N.C. App. 207, 215, 897 S.E.2d 30, 37 (2024) (citations omitted) (emphasis added); *see State v. Greenwood*, 301 N.C. 705, 708, 273 S.E.2d 438, 441 (1981) ("[T]he smell of marijuana gave the officer probable cause to search the automobile for the contraband drug."); *see also State v. Corpening*, 200 N.C. App. 311,

315, 683 S.E.2d 457, 460 (2009) ("The 'plain smell' of marijuana by the officer provided sufficient probable cause to support a search and defendant's subsequent arrest." (citation omitted)).

More recently, in *State v. Guerrero*, this Court explained "our case law made it clear the legalization of hemp has no bearing on our Fourth Amendment jurisprudence[.]" *State v. Guerrero*, 292 N.C. App. 337, 342, 897 S.E.2d 534, 538 (2024). There, this Court cited to *Johnson*, when it stated, "[t]he smell of marijuana 'alone . . . supports a determination of probable cause, even if some use of industrial hemp products is legal under North Carolina law. This is because *only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.*' " *State v. Johnson*, 288 N.C. App. 441, 457-58, 886 S.E.2d 620, 632 (2023) (citation omitted). Moreover, "we have repeatedly applied precedent established before the legalization of hemp, even while acknowledging the difficulties in distinguishing hemp and marijuana *in situ*." *State v. Walters*, 286 N.C. App. 746, 758-59, 881 S.E.2d 730, 739 (2022) (citations omitted). This Court, again, addressed a similar issue in *Little,* when an officer immediately smelled a strong odor of marijuana in the defendant's vehicle after conducting a traffic stop and observed marijuana residue on the floorboard of the vehicle. *Little,* 2024 WL 4019033, at *1. The Court in *Little* stated, "[t]he issue is not whether the substance was marijuana or even whether the officer had a high degree of certainty that it was marijuana," rather, the issue is "whether the discovery under the circumstances would warrant a man of reasonable

caution in believing that an offense has been committed or is in the process of being committed, and that the object is incriminating to the accused." *Id.* at *9. In any event, "the odor and sight of what the officers reasonably believed to be marijuana gave them probable cause for the search." *Id.* at *9.

Thus, consistent with this Court's holdings, we follow well-established precedent. Despite the alleged, indistinguishable similarities between illegal marijuana and legal hemp, the odor or smell of marijuana "would warrant a man of reasonable caution" to believe that the substance is of an incriminating nature. That belief, based on smell or appearance, provides grounds for probable cause. Thus, the odor of marijuana, alone, is sufficient to establish probable cause to search a vehicle.

In the present case, Deputy Baugus observed an odor of marijuana coming from Defendant's vehicle. Mitchell confirmed he also detected a "strong odor" of marijuana when he spoke with Defendant. Deputy Baugus and Deputy Mitchell testified about their training and experience in identifying marijuana. When Defendant was questioned about the odor, he denied any affiliation with the possession or use of marijuana; notably, at no time did he indicate that the substance was hemp. Because "the smell of marijuana gave the officer probable cause to search the automobile for the contraband drug[,]" the trial court did not err when it concluded that the search of Defendant's vehicle was lawful and proper. *Greenwood*, 301 N.C. at 708, 273 S.E.2d at 441 (1981); *see State v. Walton*, 277 N.C. App. 154, 160, 857 S.E.2d 753, 759–60 (probable cause to search the defendant's vehicle was

established when the officer smelled marijuana with "increasing intensity throughout the traffic stop," the officer provided testimony of his training and expertise in the recognition of the odor of marijuana, and the police dog alerted the vehicle.). As a final note, even if Deputy Baugus confused legal hemp for illegal marijuana, that issue must be resolved under the beyond a reasonable doubt standard. *See Little*, 2024 WL 4019033, at \*8 ("the issue here is not whether the officers could identify the substance in [the] [d]efendant's car as hemp or marijuana for purposes of proving the elements of a criminal offense beyond a reasonable doubt."). Whereas, here, at a suppression hearing, the issue that must be resolved is whether there was evidence to support the probable cause determination. *See Id.* \*8 (citation omitted) ("The issue for purposes of probable cause for the search is only whether the officer . . . had reasonable basis to believe . . . that incriminating evidence would be found in the vehicle." (citation omitted)).

**B. Admission of the Evidence**

Defendant further argues that the trial court plainly erred in failing to suppress the evidence of the gun, which was the basis of Defendant's carrying a concealed firearm conviction, because it was gathered as a result of (1) an unconstitutional *Terry* frisk; and (2) an unconstitutional search of Defendant's vehicle. Defendant argues that had the motion to suppress been granted, the jury would not have considered any evidence concerning the recovery of the gun, and thus would not have convicted Defendant for possession of the gun. Defendant motioned

pretrial to suppress all evidence obtained because of what he contends is an unlawful *Terry* frisk and search of his vehicle; however, Defendant did not renew his objection to the admission of the evidence at trial. Thus, this issue is unpreserved due to the absence of an objection at trial and is reviewed on appeal under a plain error standard. *See* N.C. R. App. P. 10(a)(4).

Because we hold, as discussed *supra*, that the *Terry* frisk and search of Defendant's vehicle was lawful, it is unnecessary to consider Defendant's plain error analysis regarding the failure of the trial court to suppress the evidence of the gun. We conclude the trial court neither erred nor plainly erred in allowing the evidence.

## III. Conclusion

For the foregoing reasons, we hold that the trial court's findings of fact are supported by competent evidence and the findings support its ultimate conclusions of law. The trial court did not err by denying Defendant's motion to suppress and did not plainly err by admitting the gun into evidence. We hold Defendant received a fair trial free from error.

NO ERROR.

Judge COLLINS concurs.

Judge ARROWOOD concurs by separate opinion.

ARROWOOD, Judge, concurring.

I concur in the outcome of this case as bound by our precedent and *In re Civil Penalty*, 324 N.C. 373 (1989), but write separately to highlight the need for the Supreme Court to clarify this issue.

As the majority correctly notes, this Court has addressed whether the perceived odor of marijuana is sufficient to constitute probable cause, most recently addressed in *State v. Dobson*, ___ N.C. App. ____, 900 S.E.2d 231 (2024), and *State v. Little*, No. COA23-410, 2024 WL 4019033, at *3 (N.C. Ct. App. Sept. 3, 2024). Similarly in *State v. Parker*, 277 N.C. App. 531, 541 (2021), this Court was not required to "determine whether the scent or visual identification of marijuana alone remains sufficient to grant an officer probable cause to search a vehicle[,]" because the defendant in *Parker* admitted to law enforcement officers that he had just smoked marijuana and produced a partially smoked marijuana cigarette. *Id.*

Likewise in *State v. Teague*, this Court noted that "our appellate courts have yet to fully address the effect of industrial hemp's legalization on the panoply of standards and procedures applicable during the various stages of a criminal investigation and prosecution for acts involving marijuana," (citing *Parker*, 277 N.C. App. at 541), but held that "[t]he passage of the Industrial Hemp Act, in and of itself, did not modify the State's burden of proof at the various stages of our criminal proceedings." *State v. Teague*, 286 N.C. App. 160, 179 (2022) *writ denied, review denied*, 891 S.E.2d 281 (N.C. 2023). The *Teague* Court discussed two federal cases it

*ARROWOOD, J., concurring.*

found persuasive, including *United States v. Harris*, No. 4:18-CR-57-FL-1, 2019 WL 6704996, at *3 (E.D.N.C. Dec. 9, 2019) (explaining that "the smell of marijuana alone . . . supports a determination of probable cause, even if some use of industrial hemp products is legal under North Carolina law . . . because 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'") and *United States v. Brooks*, No. 3:19-CR-00211-FDW-DCK, 2021 WL 1668048, at *4 (W.D.N.C. Apr. 28, 2021) ("[T]he presence of hemp does not make all police probable cause searches based on the odor unreasonable. The law, and the legal landscape on marijuana as a whole, is ever changing but *one thing is still true: marijuana is illegal.*").

We are bound by these opinions in like circumstances where a law enforcement officer detects the odor of marijuana, the possessor does not claim that the odor came from legal hemp, and the odorous substance was in fact marijuana. However, as the SBI memo cautions, legal hemp and illegal marijuana have become increasingly difficult to distinguish between, in detecting by odor or testing for chemical composition. In light of these challenges and questions that have occurred since the changes in the law regarding hemp, I respectfully suggest that this issue presents an emerging issue that is ripe for our Supreme Court to address to assist in clarifying for courts and law enforcement in light of the new legal landscape after the legislation pertaining to hemp.